BRUNOT, J.
 

 This is a suit by the executrix of the estate of David M. Barrow to recover the proceeds of a $5,000 life insurance policy issued upon the life of decedent, and alleged to have been in force at the time of his death, less a loan of $1,709.24, for which sum the policy was pledged with the defendant to secure the payment thereof.
 

 The case was submitted on an agreed statement of facts, and certain letters written by
 
 *599
 
 the insured to the defendant’^ cashier in New Orleans, and the cashier’s replies thereto. The only issue presented is whether or not the policy was enforceable for its face value' at the time of the death of the insured. The trial judge held that the policy was enforceable for the net sum of $146.81, and rendered judgment in favor of the plaintiff for that amount; but, inasmuch as the defendant had deposited $146.81 in the registry of the court at the inception of the suit, the plaintiff was ordered to pay the court costs. The plaintiff obtained the proper order, and perfected an appeal from the judgment.
 

 The policy was issued December 6, 1902, and the wife of the insured was named therein as the beneficiary. Subsequently the wife of ■ the insured died, and on February 20, 1920, the insured caused the policy to be made payable to his executors, administrators, or assigns.
 

 The premiums on the policy were regularly paid from the date of its issuance until November 25,' 1928. The notice of the due date of that premium was timely mailed to the insured, but the premium was not paid. This, however, is not material because the insured died December 20, 1928, within the thirty days of grace, during which time a provision of the policy waives default for the nonpayment of tlie premiums promptly.
 

 . On November 19, 1928, the insured wrote a letter to the defendant’s cashier in New Orleans, from, which we excerpt the following:
 

 “I am therefore writing to know how much insurance in the form of an ordinary paid up life policy I can. buy or convert this policy .into (if such is possible).”
 

 In reply to this letter, the defendant’s cashier informed the insured that he had written to the defendant’s New York office for the requested information. On December 6, 1928, the defendant’s New Orleans cashier wrote to the insured, in part, as follows:
 

 “The paid up insurance value after deducting the outstanding loan is $138.00 and the New York office informed us that if the paid up value, after deducting the loan is elected, your request must be in by December 10,1928, as loan interest is deducted up to that date only. If request is received after this date, they will deduct loan interest up to the date request is received. Should the paid up insurance value, after deducting the loan be desired, the enclosed request for change of policy should be personally signed by you and re- ' turned to this office on or before December 10, 1928.” '
 

 ' The insured did not sign and return the printed form for a change of the policy from a straight life to a paid up policy, but on December 10," 1928, he wrote 'the defendant’s New Orleans cashier as follows: ■ ■
 

 “Your ietter of the 6th in regard to the above mentioned poliey'is received.
 

 “After considering the matter I have decided to take the total surrender value and discontinue the policy.
 

 “The total cash surrender vaíue as I understand it of this policy is $138.00 less interest on the loan from this date until the settlement can be made. However in my opinion this additional interest should not be deducted as my letter asking .for the information necessary for me to make-a decision was written on November 19th, .twenty days, before the date mentioned by you- (Dec. 10th) which
 
 *601
 
 should have' given you ample time for the reply to have reached me in time for my decision before that date'expired. The delay is with the Company and not upon my part.
 

 “Please let me have the necessary papers for the surrender of the policy as indicated above as promptly as possible.”
 

 This letter, considered in connection with the insured’s failure to sign and return the application sent him on December 6, 1928, for a change of the policy from a straight life to a paid up policy, convinces us that the insured elected to have the policy canceled upon the payment to him of its total surrender value. He was in error as to the actual surrender value of the policy, and, as- the policy was held by the defendant as security for the loan to him, he was also in error in assuming that his decision, expressed in his letter of December 10, 1928, was not sufficient authority to the defendant to cancel the policy upon payment to him of its surrender value. These errors do not affect the expressed decision of the insured, but unfortunately they seem to have- caused the institution of this suit. • ■
 

 On December 12,1928, the defendant’s New Orleans cashier answered the insured’s letter of December 10, 1928, in part, as follows:
 

 “From’ your letter I deduct that you desire to cash the policy in for whatever cash value is available under the policy and I am today malting requisition on our New York office for the cash value of the policy, ihcluding the dividend of $59.73 due November 25, 1928, under this policy.”
 

 There was no reply to this letter. On December 18,1928, the defendant issued its check on the Hibernia Bank & Trust Company, of New Orleans, La., payable to the order of the insured, for $146.81, the cash surrender value
 
 of
 
 the policy sued upon, less the insured’s loan and the interest due thereon to December 15, 1928, the date the requisition of defendant’s New Orleans cashier was received at its New York office. The figures are as follows: Surrender value of policy $1,801, plus anniversary dividend $59.73, total $1,860.-73, from which sum there was deducted the insured’s loan of $1,709.24, plus $4.68, the interest thereon for 20 days, total $1,713.92; balance $146.81.
 

 The defendant forwarded its check to its New Orleans cashier for transmission to the insured. The insured died on December 20, 1928, prior to its receipt by the defendant’s New Orleans cashier. The latter immediately forwarded it to the insured. A few days thereafter the executrix of the estate of the insured returned the cheek, and on December 10,1929, this suit was filed.
 

 Counsel for plaintiff cites from C. J„ vol. 32, p. 1260, the following:
 

 “In order, however, to terminate the contract of insurance, a request for cancellation must be made by the insured to the company, and it must be unequivocal and absolute.”
 

 We have announced the conclusion that the insured, in his letter of December 10, 1928, to defendant’s New Orleans cashier, unequivocally elected to have his policy canceled upon.the payment of its total surrender value, less the insured’s indebtedness to the defendant.
 

 Under his contract of insurance he had the irrevocable right to demand the cash surrender value of his policy at any time, and the moment he mailed his election to exercise that
 
 *603
 
 right his election became a binding contract between the insured and the insurer.
 

 In Northwestern Mutual Life Insurance Co. v. Joseph (Ky.) 103 S. W. 317, 318, 12 L. R. A. (N. S.) 439, in which the question we are considering was the issue, the court said:
 

 “It will thus be seen that the principal question to be determined is, did the mailing of the letter inclosing in proper form his election complete the contract in this respect as between Joseph and the company? and, if so, did his death before the letter was delivered to the company annul the election made by him — it being conceded that the acceptance of the election by Joseph was made in proper form and was in terms in exact compliance with the option tendered? In Page on Contracts, § 52, it is said: ‘Where the mail or telegraph is a proper means of communication, the great weight of modern authority is that the acceptance is binding on both parties from the moment that it is transmitted, if such transmission is effected in the proper way. So an insurance policy which is not to be in effect until “delivery” takes effect when it is mailed to the insured, properly addressed, postage prepaid.’ The author also declared that the acceptance thus made or a contract thus completed cannot be revoked after the letter of acceptance is mailed, and says: ‘If the party making the offer died before the letter of acceptance is received, but after it is mailed, the offer does not lapse, since it has already been turned into an agree-' ment by acceptance. The rule is the same where the party accepting the offer dies after his letter of acceptance is mailed.’ * * *
 

 “The insured under his contract had the unqualified right, upon the maturity of the tontine period, to elect which one of the several options in his contract he would accept, and the company had no right or authority to modify or in any way interfere with or deny him the right to accept which one of them he pleased. His right to the election was optional with him, but absolutely binding upon the company, as in the contract it tendered to him unequivocally this right. Therefore, when the insured exercised his election in proper form and in the manner provided in the policy, it was as irrevocable a contract as could be made. It' was a complete contract' before Mr. Joseph died.”
 

 Defendant cites Lockwood v. New York Life Insurance Co., 175 App. Div. 24, 161 N. Y. S. 700. This case is in point, for it holds that the insured’s proposal, by letter, to his insurer for the surrender of his policy for its cash value, although the policy did not provide for the payment of cash for its surrender, became a binding contract the moment the insurer accepted the proposal, and the death of the insured before the agreement was finally closed did not affect the contract.
 

 Counsel for plaintiff cites two cases, viz., Lovell v. St. Louis Mutual Life Insurance Co., 111 U. S. 264, 4 S. Ct. 390, 393, 28 L. Ed. 423, and Magruder v. United States (D. C.) 32 F. (2d) 807, 810. In neither of these cases was there a meeting of the minds of the parties, and therefore there was no contract. From the opinion in the Lovell Case, we excerpt the following:
 

 “Now, while it is true that the mutual mistake of Lovell and the company’s agent could not change the written stipulation, nor bind
 
 *605
 
 the company to give Lovell a paid-up policy for a greater amount than the sum of the premiums paid, yet as the mistake was in fact made, and as Lovell surrendered his policy under the influence of that mistake, * * * it was the duty of the company either to have returned him his policy unchanged or at least to have given him notice of the mistake. * * *
 

 “But nothing of the kind was done. The company neither returned the policy, nor gave Lovell any notice that it would not be commuted for the amount which he supposed and expected it would be; and, of course, he was led to suppose that everything was right, and that he would receive his paid-up policy and note in due time.”
 

 We do not think the Lovell Cáse or the Magruder Case can be held to have application to the facts of this case. In the Magruder Case, the court said:
 

 “If the parties intended that the statement should be a cancellation of the policy, they certainly made a failure in attempting to express that fact. * * * There is not contained in the statement any language referring to or stating that the original policy was to be canceled. No reference whatever is made to the policy, and because the bureau thereafter inserted on it the word ‘cancel’ would not, without her consent, make it binding upon her.”
 

 We find no error in the judgment appealed from, and it is therefore affirmed at appellant’s cost.
 

 O’NIELL, C. X, absent.