### FOWLER et al. v. STATE LIFE INS. CO.
### No. 4948.

Court of Appeal of Louisiana.   Second Circuit.

April 1, 1935.

Elder & Elder and C. Emmett Barham, all of Ruston, for appellants.

Barksdale, Warren & Barksdale, of Ruston, for appellee.

MILLS, Judge.

Plaintiffs, beneficiaries of William D. Fowler, deceased, under a life insurance policy in the amount of $1,000, issued by defendant to deceased on October 12, 1929, allege that insured died November 14, 1933, and that due notice was given the insurer. That annual premiums had been paid for the years 1929, 1930, 1931, and 1932. That the premium of $29.99 for 1933, due October 12, 1933, was more than 31 days' past due at the time of insured's death. That the policy contains the following provisions:

"Non-forfeiture Options. After two full annual premiums have been paid on this Policy and within thirty-one days after any subsequent premium shall have become due, the owner of this Policy, by written request to the Home Office of the Company, may elect any one of the following options:

"(1) Extended Insurance—To have the Policy continued for its face amount from the due date of the unpaid premium as nonparticipating term insurance without loan or cash values.

"(2) Paid-Up Policy—To legally surrender the Policy to the Company for a paid-up participating Policy, payable at the same time and on the same conditions as this Policy.

"(3) Cash or Loan Value—To receive the cash value upon legal surrender of the Policy to the Company, or a loan as provided for under the paragraph 'Loans'.

"In the event that no such election is made, the Company will continue this Policy in force as extended insurance according to option (1) and all other options will be deemed waived."

That under these provisions plaintiffs are entitled, under the extended insurance clause, to the face value of the policy less $29.99 borrowed on it by the insured.

Defendant's exception of no cause or right of action being overruled, it set up in defense that on October 14, 1933, assured wrote, "I will not be able to pay annual premium. Please send me the balance of what I have coming." And again, by letter of October 30, 1933, "I don't think I can take care of my premium so please send me what I have coming." That on November 8, 1933, prior to his death, it forwarded to assured all necessary papers, receipts, and instructions under said option clauses, which have never been returned. That the above correspondence constitut-

ed an election of the cash value clause and limited the liability of defendant to same, which defendant is ready and willing to pay to the proper parties on the submission of proper proof.

After due trial had, there was judgment rejecting plaintiffs' demand, from which they have appealed.

The testimony shows that defendant received the letter of October 14, 1933, three days later, and answered it on October 24, 1933, urging insured not to surrender his insurance and offering several alternatives. The letter of October 30th, apparently in answer to the above, while not expressly rejecting the alternatives, expressed his inability to keep up the premiums and reiterated assured's demand for "what I have coming." The reply of defendant, dated November 8, 1933, reads:

"We regret very much to note from your communication of October 30th that you still wish to surrender Policy No. 409982.

"If you will date and sign the enclosed release as the insured, also have it signed by your father and mother, as the beneficiaries, have the signatures witnessed and return same to us with the policy, the matter of making settlement will receive our consideration.

"We cannot help but feel you are making a serious mistake in giving up this insurance and if, even yet, you should change your decision, do not hesitate to so advise us."

There was no further correspondence.

On the trial, defendant by proper objection preserved its rights under the exception. Plaintiffs offered the policy and rested upon it and the admissions contained in the answer. Defendant offered the correspondence outlined above and proof of signature of assured. The trial judge decided that this showing established an election on the part of deceased.

It will be noted that in the first paragraph of the nonforfeiture conditions, an election is accomplished "by written request to the Home Office of the Company." The assured not only made such written election, but wrote a second time rejecting the offered alternatives and reasserting his demand for the cash surrender value. The rights of the parties were thereby fixed even though, before the making of settlement, the company required the submission of formal proofs and both it and the law required the surrender of the policy. Act No. 57 of 1932.

Without further discussion, we adopt the expression of our Supreme Court in the similar case of Tucker v. Equitable Life Assurance Society, 174 La. 598, 141 So. 71, 72, viz.:

"We have announced the conclusion that the insured, in his letter of December 10, 1928, to defendant's New Orleans cashier, unequivocally elected to have his policy canceled upon the payment of its total surrender value, less the insured's indebtedness to the defendant.

"Under his contract of insurance he had the irrevocable right to demand the cash surrender value of his policy at any time, and the moment he mailed his election to exercise that right his election became a binding contract between the insured and the insurer."

As defendant does not urge its exception of no cause or right of action, we will not consider it.

We find the judgment of the lower court correct, and it is accordingly affirmed.