CLAIRELAINE GARDEN APART-
MENTS, INC., et al., Appellants,

v.

OCCIDENTAL LIFE INSURANCE COM-
PANY OF CALIFORNIA, Appellee.

No. 18650.

United States Court of Appeals
Fifth Circuit.

May 9, 1961.

Rehearing Denied June 8, 1961.

Henry D. Akin, Jr., Akin & Vial, Dallas, Tex., for appellants.

James McCollum Burnett, Corpus Christi, Tex., Theo F. Weiss, San Antonio, Tex., for appellee, Clemens, Knight, Weiss & Spencer, San Antonio, Tex., Lewright, Dyer & Redford, Corpus Christi, Tex., of counsel.

Before TUTTLE, Chief Judge, and HUTCHESON and JONES, Circuit Judges.

HUTCHESON, Circuit Judge.

This appeal tests for error the district judge's decision and order, entered on the undisputed facts,[1] granting appel-

1. The policy was a "Key Man" insurance policy issued by appellee in May, 1952, to Clairelaine Garden Apartments, Inc., insuring the life of its President, Orville W. Eastland. (For brevity, Clairelaine Garden Apartments, Inc. will be herein referred to as "Clairelaine", and Appellee, Occidental Life Insurance Company of California, will be referred to as "Occidental".

Clairelaine was the applicant, owner and beneficiary of a term life insurance policy insuring the life of Orville W. Eastland, President of Clairelaine, issued by Occidental in March, 1950, in the face amount of $417,088.00.

On or about May 3, 1952, the term policy mentioned in the paragraph immediately preceding was converted into a permanent type policy, retroactively effective as of March 17, 1950, in the face amount of $340,000.00, insuring the life of Orville W. Eastland and naming Clairelaine as applicant, owner and beneficiary. This is the policy here involved.

Contemporaneously with the issuance by Occidental of said converted policy on May 3, 1952, and for the purpose of paying current and advanced premiums on said policy, Clairelaine, on May 8, 1952, negotiated a loan of $137,000.00 from Frost National Bank of San Antonio, Texas. The loan from the Bank was evidenced by a promissory note executed by Clairelaine dated May 8, 1952, and, as a part of the same transaction, Clairelaine, acting through Eastland, its President, who was authorized to act by proper Resolution of the Board of Directors, executed and delivered to said Bank a written Transfer and Assignment of said policy of insurance as collateral security.

The Bank held said policy until its surrender.

On or about May 8, 1952, Clairelaine, acting under proper Resolution of its Board of Directors, assigned said policy to Frost National Bank of San Antonio as collateral security for the payment of the promissory note hereinafter mentioned. Such policy of insurance was surrendered to Occidental and cancelled during the month of March, 1955, upon a joint written Application of Clairelaine and Frost National Bank of San Antonio, accompanied by proper Resolution of Clairelaine's Board of Directors. Occidental, upon such surrender, paid the full cash surrender value of said policy, a portion of which was applied by the Bank to satisfy the balance owing upon a promissory note payable to said Bank which had originally been executed by Clairelaine on May 8, 1952, for the purpose of obtaining funds to pay the current and advanced premiums on said policy, and the remainder of said cash surrender value was paid to Clairelaine.

On April 3, 1954, a joint Application by Clairelaine, accompanied by proper Resolution of the Board of Directors and the Bank was made to Occidental requesting the withdrawal of advanced premiums in the amount of $99,589.79. On April 10, 1954, the note of Clairelaine payable to said Bank was credited with said amount which had been received from Occidental.

Under date March 14, 1955, Clairelaine, together with Frost National Bank, executed the written Application for Surrender Value of Policy, which was authorized by a proper Resolution certified by Orville W. Eastland, President. Said ap-

lee's and denying appellants' motion for summary judgment in a suit brought to enforce the payment of the death benefits of a life insurance policy. Under the clear provisions of the policy, Clairelaine, as the beneficiary owner, held the right "to surrender this policy to the company for the net cash value, which is the cash value as shown on Column One of the Table, less any indebtedness to the company hereon". By the terms of the assignment, which was executed simultaneously with the issuance of the policy, Clairelaine assigned this right to the Frost National Bank, such assignment reading:

"B. It is expressly agreed that, without detracting from the generality of the foregoing, the following, specific rights are included in this assignment and pass by virtue hereof.

\* \* \* "(2) The sole right to surrender the Policy and receive the surrender value thereof at any time provided by the terms of the policy and at such other times as the insurer may allow."

As we understand appellants' position, they make no claim that the policy was not in fact cancelled and surrendered. Their entire case appears to be based upon the contention that, notwithstanding the intentional voluntary surrender, cancellation and termination of the policy on March 17, 1955, and the payment of the cash surrender value by appellee, the policy remained in effect for thirty-one days after March 17, 1955, by virtue of the grace period provision of the Texas statute, and the surrender of the policy for its cash surrender value was completely without effect on the insurer's liability for the face of the policy.

Appellants' main reliance for this contention seems to be on Satery v. Great American Reserve Ins. Co., Tex.Civ.App., 278 S.W.2d 377, 378. In this case, the insurance company issued a $1000 policy on the life of Mrs. Satery on August 25, 1953. The premium was paid through October 25, 1953. On November 5, 1953, she wrote the company, "I wish to drop my life insurance under the above policy number". On November 12, the company replied, "As requested, your policy was permitted to lapse on 25 October, 1953". On November 14, 1953, Mrs. Satery died an accidental death. The plaintiff, in a suit on the policy, contended that the above correspondence between Mrs. Satery and the company was without effect because, under Article 3.44 of the Texas Insurance Code, V.A.T.S., the policy continued in force for the grace period and, the insured having died before the end of the grace period, the policy became a claim for its face value.

The court held that the stipulated facts showed that there was no intention by either party to cancel the life insurance or to waive any rights thereto which had accrued. The court said that the real question was the legal effect of the two letters noted and whether an insured and an insurance company can by mutual agreement, unsupported by valuable consideration, terminate the policy so as to waive or do away with the grace period provided for therein and by the statutes

plication for Surrender, together with the policy, was transmitted to Occidental by Frost National Bank on March 15, 1955, and was received by Occidental on March 17, 1955, which would have been the due date of another annual premium in the amount of $15,388.40. The surrender and cancellation were effective as of March 17, 1955.

Pursuant to said Application for Surrender, Occidental cancelled said policy as of March 17, 1955, and forwarded to Frost National Bank its Check No. 371456 dated March 22, 1955, for the full cash surrender value of said policy in the amount of $34,340.00. On March 23, 1955, said check was credited by said Bank on the note of Clairelaine as follows: $32,600.00 to principal and $1,011.05 to interest, and the balance of said cash surrender value in the amount of $728.95 was, on March 24, 1955, transmitted to Clairelaine Garden Apartments, Inc. by Cashier's Check of Frost National Bank, which check was endorsed "Clairelaine Garden Apartments, Inc., Orville W. Eastland", and cashed.

of the State of Texas. The court, holding that the letters were unsupported by any consideration and did not evidence an intention to cancel the policy, stated that if Mrs. Satery had changed her mind within the thirty day grace period and had tendered the next premium to the company during that time, the company would have been required to accept the premium and continue the insurance in force.

The district judge thought that the Satery case was an entirely different one from the facts of this case and that it had no bearing on the issue for decision here, which was whether the insured and insurer had exercised the rights granted in the policy to demand the cash surrender value of the policy and terminate the insurance. We think the district judge was right in so holding.

Here, the question is whether, notwithstanding the fact that the insured had requested, and the insurer had paid to it, the cash surrender value of the policy upon an application which in terms declared that the insured was applying for the cash surrender value of the policy and surrendering the policy, the insurer was still liable for the face of the policy. The policy provision under which this action was taken reads:

"While this policy is in full force and after premiums have been paid to or beyond the end of the policy year for which a cash value is first shown in the particular table of non-forfeiture values corresponding to the age of the insured shown on the first page of the policy, one of the following options shall be available:

"Cash. To surrender this policy to the company for the Net Cash Value—which is the Cash Value as shown in Column 1 of the table less any indebtedness to the company hereon."

The above policy provision gave to Clairelaine and the bank an option which was irrevocable against the company. When they exercised said option and accepted the offer by presenting the application for surrender, the policy contract was terminated and cancelled except for the payment of the cash surrender value. The other contractual provisions were terminated as to all parties.

The termination of the contract as an insurance contract was complete on March 17, 1955, upon the receipt and acceptance by Occidental of the application for surrender of the policy. The application for surrender contained the following express provision:

"It is agreed that the entire liability of the company under said policy except for said net cash value is hereby discharged and terminated."

While no authority is really necessary to support the obvious conclusion from the undisputed facts that the policy had been cancelled and was no longer in force, two decisions of this court which fully support the decision of the district judge may be cited: Mercantile National Bank at Dallas v. Franklin Life Ins. Co., 5 Cir., 248 F.2d 57, and Franklin Life Ins. Co. v. Smithers, 5 Cir., 285 F.2d 875. In the latter case, while the court held that efforts made by the insured to surrender the policy had not been completed before his death and, therefore, the policy was in force at death, the opinion clearly held that if they had been completed, the policy would no longer have been in force. Here it is recognized by all that there was a completion of the cancellation.

Appellant's sole contention here is in effect that, since it was not to the insured's interest to cancel the policy for its cash surrender value, the cancellation was not effective.

We know of no decision or principle which supports this view. Certainly the Satery case, on which appellants place their full reliance, does not support it. It seems to us that the appellants, in making their contention, are seeking to read out of the policy the option to take the surrender value and cancel the policy. This option was expressly availed of and

**460**

precisely complied with by the parties here.

In making these contentions, the appellants are undertaking not to enforce, but to rewrite, their contract so as to obtain a windfall and, thus, to eat their cake and have it too. Nothing in the policy so provides. The policy was surrendered in exact accord with the cash surrender option. In the same exact accord the money was paid to, and received by, the owner and beneficiary. The policy was surrendered, and thereafter it no longer remained in force.

The judgment was right. It is affirmed.