Yvonne NICOLSON, Plaintiff-Appellant,

v.

LIFE INSURANCE COMPANY OF the SOUTHWEST, Defendant-Appellee.

No. 85–3518.
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

March 10, 1986.

David L. Colvin, Gretna, La., for plaintiff-appellant.

Phelps, Dunbar, Marks, Claverie & Sims, Virginia N. Roddy, New Orleans, for defendant-appellee.

Before GEE, REAVLEY and ROBERT MADDEN HILL, Circuit Judges.

## OPINION

ROBERT MADDEN HILL, Circuit Judge:

Plaintiff Yvonne S. Nicolson[1] appeals from the district court's grant of summary judgment for Life Insurance Company of the Southwest (LICSW). Finding that the insurance policy sued under was not in force on the date of the death of the insured, Roger A. Gifford, because he had previously effected the cancellation of the policy and no grace period applied, we therefore affirm.

## I. FACTS

There is no dispute among the parties concerning the facts central to this appeal. On or about February 5, 1983, Nicolson and Gifford each completed applications for life insurance which were forwarded to LICSW. LICSW accepted these applications and issued two policies. LICSW issued the policy in question, number 137985 ("the policy"), a one year renewable term life insurance policy, to Gifford; the face amount of the policy was $100,000, the beneficiary was Nicolson, and the effective date was March 15, 1983. LICSW also issued policy number 137984 to Nicolson.

Nicolson wrote a check dated February 5, 1983, to pay the first premiums for both policies. Also on February 5, Gifford and Nicolson signed a "request for preauthorized check plan." This authorization provided for LICSW to draw checks on Nicolson's bank account to pay the premiums on the policies, each check to be deposited on the fifteenth day of the month. Pursuant to the authorization, LICSW drew checks on the account for monthly premiums until February 1984.

On or about January 28, 1984, Gifford applied for life insurance with the Massachusetts Indemnity and Life Insurance Company (MILCO). Next to a space on the application marked "Existing Insurance" Gifford listed his $100,000 policy with LICSW. Under the heading "Replacement" Gifford checked "yes." MILCO issued a policy to Gifford naming Nicolson as beneficiary. According to Nicolson, following the death of Gifford she received $125,-000 in benefits under this policy.

Nicolson called her bank and requested them not to pay the LICSW premiums due on February 15, 1984. The bank complied and the check deposited by LICSW for the premium due February 15 was stamped "payment stopped, do not redeposit" and returned by the bank to LICSW on February 22. According to Nicolson, she stopped payment of the premiums because she and Gifford had purchased other life insurance.

Gifford and Nicolson also wrote to LICSW to cancel their policies. The letter stated the following:

Re: Cancellation of Policy
or Policies

Gentlemen:

This is official notification that I am cancelling the following insurance policies with your company as of this date:

Policy #   137985
137984

Please forward all cash values, dividends and interest from these policies to the above address. Do not exercise the automatic premium loan provision of my policies to pay any premiums, as I prefer to have all cash benefits sent directly to me.

Please do not have an agent contact me. Immediate action on this request will be greatly appreciated.

The letter was signed by Gifford and Nicolson. Although the letter was undated,

---

**1.** The judgment of the district court as well as her briefs misspell plaintiff's name as "Nichol-son."

LICSW received it on February 23, 1984. Included with the letter were policies 137984 and 137985. On March 7, 1984, LICSW wrote to Gifford stating "our records have been changed to terminate this policy as of the paid to date, term insurance does not have value." Gifford died on March 10, 1984.

On September 21, 1984, Nicolson filed suit in Louisiana state court against LICSW for $100,000, the face amount of the policy. Nicolson claimed the policy was in effect at Gifford's death because of a thirty-one day grace period provided for by the policy and by statute. LICSW succeeded in removing the case to federal court, where diversity jurisdiction existed. On cross-motions for summary judgment, the district court without opinion granted LICSW's motion and entered judgment for LICSW. Nicolson now appeals.

## II. DISCUSSION

This case was an appropriate one for resolution by summary judgment, because there were no genuine issues as to any material facts. The parties agree that virtually every fact relevant to this appeal is undisputed.[2] The dispositive issue is one of law: whether Louisiana law providing for a mandatory thirty-day grace period applies where the insured has affirmatively cancelled his policy.

Nicolson argues that two Louisiana statutory provisions require a thirty-day grace period extending coverage beyond the date when coverage would otherwise lapse. Since Gifford died within thirty days after his cancellation of the policy, Nicolson contends that these provisions kept the policy in force and entitled her to recover the face amount of the policy as its beneficiary. One provision requiring a grace period states in relevant part:

> No policy of life insurance ... shall be delivered or issued for delivery in this state unless it contains in substance the following provision or provisions which in the opinion of the commission of insurance are more favorable to the policyholder:
>
> A provision that the insured is entitled to a grace period either of thirty days or, at the option of the insurer, of one month within which the payment of any premium after the first may be made, during which period of grace the policy shall continue in full force, but if a claim arises under the policy during such grace before the overdue premiums or the deferred premiums of the current policy year, if any, are paid, the amount of such premiums, together with interest, not in excess of six per cent per annum, on any overdue premium, may be deducted from any amount payable under the policy in settlement.

La.Rev.Stat.Ann. § 22:170(A)(1) (West 1959). Another provision is entitled "Written notice required before lapsing life policies," and states in part:

> No life insurer shall within one year after default in payment of any premium, installment, loan or interest, declare forfeited or lapsed any policy issued or renewed, and not issued upon the payment of monthly or weekly premiums or for a term of one year or less, for non-payment when due of any premium, installment, loan or interest, or any portion thereof required by the terms of the poli-

---

**2.** Nicolson concedes that "[v]irtually every fact can be stipulated for the purposes of this appeal." Nevertheless, later Nicolson argues that a factual issue existed as to Gifford's intent in terminating his LICSW policy. We recognize that all facts and inferences must be viewed in the light most favorable to the party opposing a summary judgment motion. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). However, we find that all of the factual material indicated that Gifford's intention was to cancel his LICSW policy. His letter to LICSW explicitly asked for cancellation of the policy. Nicolson's deposition testimony also indicated Gifford's desire to cancel. Nicolson has pointed to no facts or inferences which would indicate that Gifford intended anything other than to cancel the policy. There is no evidence that Gifford merely wished to amend the policy. As to Gifford's motive in cancelling the policy, the only evidence on this issue indicates that Gifford wished to drop his LICSW coverage in order to procure coverage from MILCO.

cy to be paid, unless a written or printed notice stating:

(1) The amount of such premium, installment, loan or interest, or portion thereof due on such policy; and

(2) The place where it shall be paid and the person to whom the same is payable, shall have been duly addressed and mailed to the person whose life is insured ... at least fifteen and not more than forty-five days prior to the date when the same is payable.

No policy shall in any case be forfeited or declared forfeited or lapse until the expiration of thirty days after the mailing of such notice. Any payment demanded by such notice and made within the time limit shall be taken to be full compliance with the requirements of the policy in respect to the time of such payment.

La.Rev.Stat.Ann. § 22:177 (West 1959).

The policy itself contained a clause concerning the grace period contemplated by section 22:170(A)(1). It provided the following:

We allow each premium after the first one to be paid within 31 days after its due date. These 31 days are called the grace period. The policy remains in effect during the grace period. If the insured dies during this period, the unpaid premium will be deducted from the amount we would otherwise pay.

The policy did not have a specific provision concerning cancellation of the policy. Since Gifford died within thirty days of the letter from LICSW acknowledging cancellation of the policy, Nicolson contends that the policy was still in force.

■ The parties agree that Louisiana law governs in this diversity case. In determining the applicability of these statutory and contractual provisions, we must interpret the law as would a Louisiana court. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1128 (1938). However, no reported Louisiana case has addressed the applicability of a statutory grace period when an insured has affirmatively cancelled his policy. When making

an *Erie* guess in the absence of specific guidance from the Louisiana Supreme Court, our predication of state law looks to other sources: (1) lower state court decisions and Supreme Court dicta, (2) the lower court ruling in this case, (3) the general rule on the issue, (4) the rule in other states looked to by Louisiana courts, and (5) other available legal sources, such as treatises and law review commentaries. *See Jackson v. Johns-Manville Sales Corp.,* 781 F.2d 394, 397 (5th Cir.1986) (en banc).

The long-standing rule applied by Louisiana courts is that an insured has "the irrevocable right to demand the cash surrender value of his policy at any time." *Tucker v. Equitable Life Assur. Soc.,* 174 La. 598, 141 So. 71 (1932); *Fowler v. State Insurance Co.,* 160 So. 139 (La.Ct.App. 1935). This rule has been extensively modified by Louisiana's Standard Nonforfeiture Law for Life Insurance, which details the provision of nonforfeiture benefits upon surrender of the policy. *See* La.Rev. Stat.Ann. § 22:168 (West Supp.1986). However, this statute has not eliminated the *Tucker* rule that an insured may surrender his policy when he chooses. The insured's right to cancel is recognized in other states as well. *E.g., Porter v. J.C. Penney Life Insurance Co.,* 356 N.W.2d 760 (Minn.Ct.App.1984).

■ The mandatory grace period under Louisiana law does not address itself to a situation, such as the one here, where an insured affirmatively cancelled his policy. Section 22:170(A)(1) speaks of the policy continuing in force during the grace period and "before the overdue premiums or the deferred premiums" are paid. An insured who cancels his policy does not have premiums which are "overdue" or "deferred;" he is instead no longer obligated to pay them. Section 22:170(A)(1) aims to protect an insured whose policy would otherwise lapse upon failure to pay a premium when due. We have found no indication in Louisiana law that this statutory provision was designed to provide an extra month of free insurance to an insured who cancels his policy. *See* J. Appleman, *Insurance Law*

and Practice § 7959 (rev. ed. 1985) ("A grace period does not contemplate free insurance, but is allowed to permit the insured to have an extension of opportunity within which to pay another premium and thus avoid forfeiture....").

No Louisiana court has yet had the opportunity to so construe section 22:170(A)(1), but *Tucker* indicates that the interpretation we give to it would be approved. In *Tucker*, decided before the enactment of this section, the insured's life insurance policy had a grace period of thirty days in which default for nonpayment of premiums was waived. The insured in *Tucker* wrote to the insurance company to cancel his policy and receive back the cash value it had accumulated. The *Tucker* court determined that the insured, who died during the grace period, had cancelled the policy, and that the beneficiary could not recover the proceeds of the policy. As in *Tucker*, Gifford took steps to cancel the policy: he expressly asked in writing for termination of the policy and return of any cash value, dividends, or interest (although there were none), he returned the policy to the insurer, and he had Nicolson stop payment of the next premium.

This Court, in construing a mandatory grace period provision in a Texas diversity case, has held that where an insured has demanded the cash surrender value of the policy and terminated the insurance, the grace period was inapplicable. *See Clairelaine Garden Apartments, Inc. v. Occidental Life Insurance Co. of California,* 290 F.2d 456, 459 (5th Cir.1961). *Clairelaine* stressed the existence of a clause in the insurance contract which gave the insured an irrevocable right to surrender and cancel his policy. Gifford's policy did not contain such a clause. However, whether such a right to cancel is written into the contract, as in *Clairelaine,* or implied by state law, as here by *Tucker,* the result is the same. The policy was cancelled and no longer in force, and the grace period was never brought into operation.

A Kansas court has more recently come to a similar result. *See Bennett v. Coloni-*

*al Life and Accident Insurance Co.,* 7 Kan.App.2d 441, 643 P.2d 1133 (1982). In *Bennett,* the court found that the sole purpose of a contractual grace period was to prevent immediate lapse of the policy upon failure to pay a premium. The *Bennett* court held that "a grace period applies only to the date when a premium is due and by definition has no application to the terminal date on which an insurance policy expires by its terms or by mutual agreement of the parties." *Id.* (citation omitted). Although *Bennett,* as did *Tucker,* interpreted a contractual grace period rather than a statutory provision such as section 22:170(A)(1), we see no reason why this distinction should make a difference.

Other courts have come to contrary results, but it is doubtful that a Louisiana court would follow these cases. *See Satery v. Great American Reserve Insurance Co.,* 278 S.W.2d 377, 380 (Tex.Civ. App.—Waco 1955, writ ref'd n.r.e.); *Provident Savings Life Assur. Soc. v. Taylor,* 142 F. 709, 713 (3d Cir.1906). These cases were decided on the theory that a statutory grace period is a safeguard for the insured and may not be waived in the absence of consideration. *See* 14 J. Appleman, *Insurance Law and Practice* § 7959 (rev. ed. 1985); 6 G. Couch, *Cyclopedia of Insurance Law* § 32:123 (2d ed. 1985). However, *Tucker* indicates that a grace period designed to save an absent-minded policyholder has no application where the insured affirmatively cancels, and thus under Louisiana law the issue of waiver never arises.

Similarly, section 22:177, requiring written notice from an insurer before lapse or forfeiture of a life insurance policy, is not applicable to the situation at hand. The purpose of this provision is to protect an insured from losing his policy through neglect in paying the premium and to allow him more time to make the payment. *See Lester v. Aetna Life Insurance Co.,* 433 F.2d 884, 888 (5th Cir.1970), *cert. denied,* 402 U.S. 909, 91 S.Ct. 1382, 20 L.Ed.2d 650 (1971). LICSW did not, as the statute contemplated, "declare [the policy] forfeited or lapsed" for nonpayment of a

premium. It was Gifford who affirmatively cancelled the policy. It would be pointless to require an insurance company to provide notice to an insured who has already affirmatively requested cancellation; we refuse to hold that the Louisiana statute should be so construed.[3]

AFFIRMED.

---

3. Because of our disposition of the above issues, the final argument of Nicolson, that she is entitled to recover penalties because of LICSW's unjustified delay in payment of her claim, is without merit. A statutory provision she cites, La.Rev.Stat.Ann. § 22:656 (West Supp.1985), allows an award of interest on an amount due by an insurer if it fails to pay "without just cause." Because Gifford's cancellation of the policy ended LICSW's obligation to pay proceeds upon his death, LICSW had just cause in denying coverage.