921 F.2d 864
 59 USLW 2447, 13 Employee Benefits Ca 1409
 Marilyn HENKIN, Plaintiff-Appellant,
v.
NORTHROP CORPORATION, a Delaware corporation; the
Prudential Insurance Company of America, a New Jersey
corporation; Provident Life and Accident Insurance Company,
a Tennessee corporation, Defendants-Appellees.
 No. 89-55683.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 3, 1990.
Decided Dec. 10, 1990.
 
 1
 Mark T. Young, Mayer, Glassman & Gaines, Los Angeles, Cal., for plaintiff-appellant.
 
 
 2
 James J. Moak and Kevin W. Manning, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendant-appellee The Prudential Ins. Co. of America.
 
 
 3
 Joseph M. Rimac and Kevin W. Manning, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendant-appellee Provident Life and Acc. Ins. Co.
 
 
 4
 Appeal from the United States District Court for the Central District of California.
 
 
 5
 Before ALARCON and NORRIS, Circuit Judges, and CALLISTER,* District Judge.
 
 CALLISTER, District Judge:
 
 6
 In this action brought under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. Secs. 1001 to 1461 (1988), we must review the interpretation of two insurance policies. The insured, Harold Henkin, was covered by two group accidental death policies issued pursuant to his employment. Henkin died thirty-one days after he was fired from that employment. The plan administrators denied coverage, and his widow, Marilyn Henkin, brought this suit to overturn their ruling. The district court granted the plan administrators' motions for summary judgment and Marilyn Henkin appeals.
 
 
 7
 Harold Henkin, a married father of three children, was employed by Northrop Corporation (Northrop) in 1982. He enrolled in two group accidental death and dismemberment policies established by Northrop for its employees. The first policy, with defendant Provident Life and Accident Insurance Company (Provident), provided $120,000.00 in benefits upon accidental death. The second policy, with defendant Prudential Insurance Company of America (Prudential), provided $42,500.00 in benefits upon accidental death. It is undisputed that both plans are ERISA plans.
 
 
 8
 On April 30, 1987, Northrop wrote a letter to Harold Henkin informing him that he was "terminated effective 29 April 1987" because of his unexcused absence from work since April 21, 1987. On May 30, 1987, Harold Henkin died of accidental causes. His widow filed this suit after her claim for benefits was denied by Prudential and Provident. Her suit claims that she is entitled to benefits for two reasons: (1) Califomia Insurance Code Sec. 10209 (West 1972) mandates coverage under both policies; and (2) the language of the Provident policy provided that her husband was insured at the time of his death.[1]
 
 
 9
 Provident and Prudential moved for summary judgment. The district court rejected Marilyn Henkin's claim that Sec. 10209 mandated coverage, and found that the language of the Provident policy did not cover Harold Henkin at the time of his death. The district court granted the summary judgment motions, and that decision was appealed by appellant Marilyn Henkin.
 
 
 10
 We review de novo the district court's award of summary judgment. Kruso v. International Telephone and Telegraph Corp., 872 F.2d 1416, 1421 (1989), cert. denied, --- U.S. ----, 110 S.Ct. 3217, 110 L.Ed.2d 664 (1990). In reviewing the decision of Prudential and Provident to deny ERISA plan benefits, we are guided by Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). There, the Court held that a denial of ERISA benefits is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan. In that situation, an arbitrary and capricious standard of review is applicable. Id. at 115, 109 S.Ct. at 956.
 
 
 11
 In this case, review of Prudential's denial of benefits proceeds de novo; counsel cited no discretionary provision in the Prudential policy to the contrary.
 
 
 12
 The Provident policy does contain a provision giving Provident "the final responsibility to determine the proper amount of each claim payment under the terms of the insurance contract." Provident argues that this provision triggers an arbitrary and capricious standard of review under Firestone. But we need not decide this issue. As will be made clear below, the denial of benefits withstands scrutiny even if the de novo standard is employed. We will therefore employ the de novo standard in examining the denials under both plans.
 
 
 13
 We turn first to appellant's argument that Sec. 10209 of the California Insurance Code mandates coverage. That statute contains two subsections relevant to this suit. Subsection (b) provides that group life policies shall contain a provision giving a fired employee thirty-one days "after such termination" to convert the group life policy to an individual policy. Subsection (d) provides that if the fired employee dies within this thirty-one day period without filing a conversion application, he will nevertheless be entitled to the benefits he would have received had an individual policy been issued.[2]
 
 
 14
 Northrop designated Harold Henkin's termination date as April 29, 1987. He died thirty-one days later without filing a conversion application. If Sec. 10209 is applicable, subsection (d) mandates coverage.
 
 
 15
 The applicability of Sec. 10209 turns initially on whether it is preempted by ERISA. ERISA is a remedial statute designed to protect the interests of employees in pension and welfare plans, and to protect employers from conflicting and inconsistent state and local regulation of such plans. Scott v. Gulf Oil Corp., 754 F.2d 1499 (9th Cir.1985). The latter purpose is achieved through the preemption, with a few exceptions, of all state laws relating to employee pension and welfare benefit plans. 29 U.S.C. Sec. 1144. One of the exceptions to preemption saves state laws that "regulate insurance." 29 U.S.C. Sec. 1144(b)(2)(A). The United States Supreme Court has interpreted ERISA to provide that a state law "regulates insurance" when it is limited to the insurance industry; has the effect of transferring or spreading a policyholder's risk; and relates to the policy itself. Metropolitan Life Ins. Co. v. Massachusetts, 471 U.S. 724, 743, 105 S.Ct. 2380, 2391, 85 L.Ed.2d 728 (1985). The specific decision in Metropolitan was that ERISA does not preempt a state statute requiring minimum mental health care benefits for all state residents covered by general health policies. The Court found that this statute regulated insurance because it applied only to insurers and dictated the contents of policies. Id. at 743, 105 S.Ct. at 2391.
 
 
 16
 We can discern no reason to treat mandated conversion rights differently than mandated mental health benefits. In Metropolitan, the Court noted that statutes mandating policy terms are commonplace, and that "mandated-benefit statutes, then, are only one variety of a matrix of state laws that regulate the substantive content of health-insurance policies to further state health policy." Id. at 729, 105 S.Ct. at 2384. The Court noted that nearly every court that has addressed the question has concluded that mandated policy language statutes are not preempted by ERISA. Id. at 742 n. 18, 105 S.Ct. at 2390 n. 18. We therefore find that Sec. 10209 is a state law "regulating insurance" and hence is saved from ERISA preemption.
 
 
 17
 The next issue to be resolved is whether Sec. 10209 applies to accidental death policies. This is a question of state law. The California Supreme Court has addressed this issue in dicta, but not in an authoritative holding. Williams v. American Casualty Co., 6 Cal.3d 266, 491 P.2d 398, 98 Cal.Rptr. 814 (1971). When a decision turns upon applicable state law, and the state's highest court has not adjudicated the issue, this Court must determine what decision the highest state court would reach if faced with the issue. Molsbergen v. United States, 757 F.2d 1016 (9th Cir.1985), cert. dismissed, 473 U.S. 934, 106 S.Ct. 30, 87 L.Ed.2d 706 (1985). Dicta from the highest court in the state, while not controlling, is relevant to this inquiry. Janikowski v. Bendix Corp., 823 F.2d 945, 950 (6th Cir.1987); Nicolson v. Life Ins. Co. of Southwest, 783 F.2d 1316, 1319 (5th Cir.1986). Thus, the California Supreme Court's dicta in Williams may be of some value in determining whether Sec. 10209 applies to accidental death policies. In Williams, Harold Williams died twenty-five days after being terminated from his employment. His widow made claim under an accidental death policy. The lower court decided that coverage had ceased before Harold Williams died, but this decision was reversed on appeal. The California Supreme Court examined a clause in the policy that terminated coverage for an employee "on the first premium due date" following his firing. Because premiums were paid by payroll deduction with no clear "due date," the court found the termination of coverage provision ambiguous and interpreted it against the insurer.
 
 
 18
 The insurer then argued that a premium payment deducted from William's September 27, 1964, payroll check was retumed to him just before his death on October 25, 1964, and thus there was no coverage. But the court interpreted the policy to provide a thirty-one day grace period. Then, in dicta, the court stated that this grace period was common in the industry, and pointed to Sec. 10209's thirty-one day conversion privilege. The court noted that while Sec. 10209 applies to group life insurance and that "[u]nder the instant group disability policy, the insurer does not have an analogous obligation" under Sec. 10209 to provide a thirty-one day grace period, nevertheless it is not unreasonable to find a thirty-one day grace period requirement in the accidental death policy itself. 6 Cal.3d at 277 n. 9, 491 P.2d 398, 98 Cal.Rptr. 814.
 
 
 19
 The policy in Williams was an accidental death and dismemberment policy, 6 Cal.3d at 269, 491 P.2d 398, 98 Cal.Rptr. 814, and yet was referred to throughout the opinion as a disability policy. The court's discussion, quoted above, shows that it did not consider the accidental death policy to be a group life policy, and that view finds support in the California Insurance Code. The Code includes accidental death policies within its definition of disability insurance.[3] The Code requires that certain terms be part of every disability policy. These mandatory terms are contained in Secs. 10270 to 10400 which are separate from the mandatory group life terms found in Secs. 10200 to 10214. Nowhere in the mandatory disability provisions is there a requirement similar to that imposed by Sec. 10209. The Code itself, then, supports the dicta in Williams that Sec. 10209 does not apply to disability policies. We are convinced that if the California Supreme Court were squarely faced with the issue, it would hold that Sec. 10209 does not apply to accidental death policies.[4]
 
 
 20
 The only remaining issue is whether the language of the Provident policy extends coverage to Harold Henkin under the circumstances of this case. The language at issue is found in Section III of the policy which provides that the insured may convert his group accidental death coverage to individual coverage within thirty-one days "after the plan ceases." The policy then goes on to provide that it ceases on "the last day of the calendar month during which your [sic] are no longer a member of the eligible class." Northrop drafted the termination letter on April 30, 1987, making Harold Henkin's termination retroactive to April 29, 1987. Provident argued that because the termination was effective April 29, 1987, coverage ceased on the last day of the month that Harold Henkin was an employee, i.e., April 30, 1987.
 
 
 21
 Appellant argued below, and here, that the intent of Section III of the Provident policy is to allow the employee a reasonable time to secure alternative coverage. Appellant argued in her briefing that "if Mr. Henkin's coverage terminated on April 30, 1987 ... as Provident contends, Mr. Henkin had absolutely no period after which he was aware, or could have been aware, of his termination, during which he could have secured alternative coverage." (Emphasis in original.)
 
 
 22
 But this argument goes too far. Harold Henkin had thirty-one days from April 29, 1987, to convert his policy. The policy further provided that any conversion was retroactively effective to the day after the plan ceased. In this case, all parties agree that Harold Henkin probably received his termination letter on May 1 or May 2, 1987, giving him about twenty-eight or twenty-nine days to convert before his death. Appellant's argument that Harold Henkin had no opportunity to secure alternative coverage is therefore without merit.
 
 
 23
 Appellant argues next that the effective date of Harold Henkin's termination should be the date he received notice of his termination on May 1 or May 2, 1987. Under this interpretation, Harold Henkin would have been insured on the date of his death because coverage continues under Section III of the policy until the end of the month in which the employee is terminated.
 
 
 24
 If we embrace this argument, we must re-write the policy. The policy now provides quite plainly that the plan ceases at the end of the month during which Harold Henkin "was no longer a member of the eligible class." He originally was a member of an "eligible class" because he was a full-time employee.[5] On April 29, 1987, he was "no longer a member of the eligible class" because he was fired on that date. There is nothing in the contract that would extend his full-time employee status until he received notice of his termination.
 
 
 25
 Appellant argues, however, that the California Supreme Court, in Walker v. Occidental Life Insurance Co., 67 Cal.2d 518, 432 P.2d 741, 63 Cal.Rptr. 45 (1967), held that an employee must receive notice before his termination is effective for insurance conversion purposes. In Walker, an employee of the Bank of America was fired on May 18, 1961, after thirty-seven years of service. Thereafter, the employee and the bank engaged in settlement negotiations over various benefits, resulting in a final settlement being entered on November 13, 1961. The employee made application on that same date to convert his group life policy to an individual policy. On that application made to the insurance company, the bank noted that employee's termination date was June 22, 1961, a date almost five months in the past. The insurer denied coverage because the employee had not applied for a conversion within thirty-one days from June 22, 1961.
 
 
 26
 The employee sued the insurer and argued that his conversion period should begin to run from the date of the final settlement on November 13, 1961, because any other interpretation would rob him entirely of his conversion rights. The California Supreme Court agreed and held that elementary principles of contract interpretation prohibited an employer from unilaterally stripping an employee of valuable conversion rights.
 
 
 27
 Whatever force Walker might have as a matter of California law, it is inapplicable to the case before us. The contract interpretation law of California is not a law that "regulates insurance," and is therefore preempted by ERISA. Kanne v. Connecticut Gen. Life Ins. Co., 867 F.2d 489 (9th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 3216, 106 L.Ed.2d 566 (1989). There are, of course, instances where preempted state law might be incorporated into a uniform federal rule of construction, see Kunin v. Benefit Trust Life Ins. Co., 910 F.2d 534 (9th Cir.1990), but even if Walker falls into that category, it is distinguishable from our case. Harold Henkin did not lose his conversion benefits as did the employee in Walker, Harold Henkin was given twenty-eight or twenty-nine days to apply for a conversion. We are therefore not faced with the situation where an employee's valuable contract right has been unilaterally withdrawn by the employer.[6]
 
 
 28
 After examining all of the circumstances of this case, we find that the denial of benefits under the ERISA plans issued by Prudential and Provident was reasonable and in accord with the plain language of the policies.
 
 
 29
 The decision of the district court is therefore AFFIRMED.
 
 
 
 *
 Honorable Marion J. Callister, Senior United States District Judge for the District of Idaho, sitting by designation
 
 
 [1]
 Appellant Marilyn Henkin concedes that the language of the Prudential policy did not extend coverage to her husband at the time of his death, and that she may recover under Prudential's policy only if we find that California Insurance Code Sec. 10209 mandates coverage
 
 
 [2]
 The preface and two relevant subsections of Sec. 10209 read as follows:
 [T]he policy shall contain a provision that the insurer will issue to the employer for delivery to the insured employee an individual certificate setting forth:
 ....
 (b) a provision that if the employment terminates for any reason whatsoever and the employee applies to the insurer within thirty-one days after such termination, paying the premium applicable to the class of risk to which he belongs and to the form and amount of the policy at his then-attained age, he is entitled, without producing evidence of insurability, to the issue by the insurer of any additional life policy in any one of the forms, other than term insurance, customarily issued by the insurer.
 ....
 (d) a provision that if the employee dies within the thirty-one day period within which he is entitled to have an individual policy issued to him in accordance with this section and before any such policy shall have become effective, the amount of life insurance which the employee is entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made.
 
 
 [3]
 California Insurance Code Sec. 106 (1972) defines "disability insurance" as follows:
 Disability insurance includes insurance appertaining to injury, disablement, or death resulting to the insured from accidents, and appertaining to disablements resulting to the insured from sickness.
 
 
 [4]
 If the accidental death policy was found to be a group life policy covered by Sec. 10209, could an insurer issue an accidental death policy to an employee who applies for a conversion of his group life policy? Without passing on this issue, we would question the fairness of that result
 
 
 [5]
 Section I of the policy provides as follows:
 The following employees are eligible for coverage:
 Class
 I All full-time employees ... of the Policyholder [Northrop].
 
 
 [6]
 We are also not faced with a situation where an employer's retroactive firing of an employee, while not stripping the employee of his conversion rights, gives the employee such a limited time to exercise those rights as to deprive the employee of the benefit of his bargain. We leave that situation to be resolved by future decisions