990 F.2d 1260
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Samuel Luther SEYMOUR; Kathy Lynn Seymour, Plaintiffs-Appellants,
v.
METROPOLITAN LIFE INSURANCE COMPANY; Darcis Ellis; Mona
Allendorf, Defendants-Appellees.
 No. 91-56063.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 6, 1992.
Decided March 22, 1993.
 
 Before POOLE, FERNANDEZ and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Kathy Lynn Seymour (Seymour) and her husband appeal the district court's entry of summary judgment in favor of Metropolitan Life Insurance Company (MetLife). The district court held Seymour's coverage under her employer's group health insurance policy did not extend to the medical expenses for her prematurely born son when Seymour had specifically declined to convert her coverage upon leaving employment. We affirm.
 
 FACTS AND PROCEDURAL HISTORY
 
 3
 Seymour was covered by a group health insurance plan while employed at Bechtel Corporation (Bechtel). Prior to leaving employment, Seymour was informed of her right to convert her group coverage to an individual policy. She specifically declined to do so because it was "quite expensive" and because, based on the birth of her first child, she expected her delivery to be easy. Since Seymour was pregnant when she left Bechtel, she was entitled under the plan to extended benefits for ninety days for the treatment of that condition.
 
 
 4
 Seymour's son was born prematurely within the ninety-day period. MetLife paid the required portion of the medical expenses associated with the delivery. It did not pay some $135,000 in expenses incurred in the post-delivery care of her son. Her state court bad faith action was removed to federal court by MetLife because those claims were preempted by the Employee Retirement Income Security Act ("ERISA"). See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 62-67 (1987) (common law causes of action filed in state court are preempted by ERISA and are removable to federal court pursuant to 28 U.S.C. § 1441(b)).
 
 CONVERSION
 
 5
 The court asked the parties to discuss the applicability of the Consolidated Omnibus Budget Reconciliation Act ("COBRA") in light of the recent case of Greany v. Western Farm Bureau Life Ins. Co., 973 F.2d 812 (9th Cir.1992). As Seymour points out, the COBRA amendments to ERISA were adopted in 1986, two years after Seymour terminated her coverage under the Bechtel plan. Prior to that time, ERISA did not specifically govern conversion rights. The California statutes, as laws "regulating insurance," were arguably not preempted by ERISA, as it existed prior to COBRA. 29 U.S.C. § 1144(b)(2)(A). See Henkin v. Northrop Corp., 921 F.2d 864, 867 (9th Cir.1990) (an exception to preemption of state laws is state laws which "regulate insurance").
 
 
 6
 Seymour relies on California Insurance Code § 12689, which provides, in part:
 
 
 7
 A notification of the conversion coverage [the written form the plaintiff signed] shall be included in each certificate of coverage or other legally required document explaining coverage; ... [and] it shall be the sole responsibility of the policyholder [Bechtel] to notify its employees or members of the availability, terms and conditions of conversion coverage which responsibility shall be satisfied by notification within 15 days of termination of group coverage. Group coverage shall not be deemed terminated until the expiration of any continuation of the group coverage. For purposes of this part, the policyholder shall not be deemed to be the agent of the insurer for purposes of notification of the availability, terms, and conditions of conversion coverage.
 
 
 8
 (Emphasis added).
 
 
 9
 Seymour relies particularly on the underlined portion. Section 12689 relates to the timing of the notification responsibilities of Seymour's employer, Bechtel, which is not a party to this case. See Caldwell v. Mutual Benefit Life Ins. Co., 177 Cal.App.3d 381, 384 (1986) ("the insurer need only issue a certificate explaining the availability of conversion coverage, and is not responsible for the employer's breach of its statutorily-imposed duty to notify the former employee " (emphasis added)). In any event, it is undisputed that Seymour received notice of her conversion rights under the plan, and specifically declined to convert her coverage under the plan to an individual policy.
 
 
 10
 Seymour's reliance on Sections 10119 and 12692 of the California Insurance Code is also misplaced. Section 10119 prohibits certain language in disability, accident and sickness policies, and requires certain coverages in those policies. Seymour's problem is not with the language in the MetLife policy, or with the coverage in it. Her problem is that the coverage had terminated, except for benefits related to her pregnancy.
 
 
 11
 Similarly, Section 12692 requires policies to contain certain provisions relating to continuation benefits for spouses and dependent children covered on the date of termination. The child was not such a covered dependent.
 
 
 12
 Seymour's claim that she was denied her right to convert her policy is incorrect. She tried to add her son as a beneficiary after his birth. However, at no time did she try to convert the group coverage to an individual policy. At the time she tried to add her son, the group policy had terminated. All she had left were extended benefits for expenses relating to her pregnancy. This is the most reasonable reading of the plan provisions relating to the effects of leaving Bechtel: "Coverage will continue for 2 weeks." The extension of benefits provision provides: "Extended coverage--Coverage will continue for 3 months from the date the insurance ends for illness or injury for which you or your covered dependents are being treated at the time the insurance cancels."
 
 
 13
 [T]erms in ERISA insurance policies [are interpreted] "in an ordinary and popular sense as would a [person] of average intelligence and experience." [The court] will "not artificially create ambiguity where none exists." "If a reasonable interpretation favors the insurer and any other interpretation would be strained, no compulsion exists to torture or twist the language of the policy."
 
 
 14
 Evans v. Safeco Life Ins. Co., 916 F.2d 1437, 1441 (9th Cir.1990) (citations omitted).
 
 
 15
 The plan also provided that the employee could apply to the insurance company for an individual policy: "Application and initial premium payment must be made within 31 days from the date coverage ends." As noted above, Seymour did not at any time apply for a conversion policy and tender the required premium. Her coverage ended fourteen days after her employment was over, except for the extended benefits due her for her pregnancy. At most, the California statutes she relies on extended the time during which she could have requested conversion of her plan coverage to an individual policy. No conversion was requested at any time, so determination of the exact point at which her conversion rights expired is unnecessary. Therefore, she has no supportable argument that she is entitled to coverage for which she neither asked nor paid.
 
 THE TERMS OF THE PLAN
 
 16
 The only issue remaining is whether the cost of caring for the premature infant should have been paid under the terms of the extended benefits made available to Seymour due to the pregnancy for which she was being treated at the time of termination of coverage.
 
 
 17
 The plan provided for payment of expenses related to "maternity," including "reasonable and customary" expenses. In two places the plan stated it would not pay for "routine nursery charges for newborn infants, and well-baby care."
 
 
 18
 Seymour's first contention, that "maternity" expenses include "baby" expenses, is not convincing. The primary definition of maternity is "the state of being a mother, motherhood." Webster's New World Dictionary (3rd College ed. 1988). The only tie between mother and child in the definition is in the use of "maternity" as a qualifier "for the care of women giving birth and of newborn babies [a maternity ward]." Id. (emphasis in original).
 
 
 19
 The common usage of maternity as relating to motherhood indicates to us that "maternity expenses" as used in the policy did not apply to care of the child after birth. The fact that hospitals may choose to include newborns in the same ward as mothers does not help in analyzing the meaning of "maternity expenses" in this policy. The expenses of caring for Seymour's son did not arise from her status as a mother, they resulted from his status as a child.
 
 
 20
 The structure of the policy indicates to us that when the plan was in force, and not just its extended benefits, a covered parent of a child could add her child to the policy as a covered dependent within thirty-one days of birth, and thus obtain protection for costs associated with the child's care after delivery. This is the real option foregone by Seymour when she refused to convert to an individual policy. Seymour's attempt to add her son accomplished nothing, as only extended benefits for Seymour's pregnancy were available at that time.
 
 
 21
 Seymour's second argument, that the specific exclusion of "well-baby care" from coverage indicates that "sick baby care" would be covered by the policy, is equally unavailing. In the Summary of Benefits section, under "Maternity (care for female employees and dependent wives)," there is a provision: "Note: Routine nursery charges for newborn infants and well baby care are not covered."
 
 
 22
 Under "Exceptions" is the same statement. This plan provision supports Seymour's analysis, but not her conclusion. "Sick baby care" is indeed covered by the policy, but not as a result of the note in the maternity section, or the exception. Sick baby care is covered if the sick baby is a covered dependent.
 
 
 23
 A Bechtel employee had the option of being covered by the MetLife plan. She then had the further option of covering her dependents. If she had exercised that option, if the plan were in effect, and if the covered baby were sick, then Seymour's argument would be sufficient to defeat the carrier's denial of benefits to the baby. It adds not a whit to her argument that her extended benefits for pregnancy included the costs of her son's care.
 
 
 24
 The real problem with Seymour's position is that she deliberately declined to purchase the coverage which would have covered the baby without question. She expected the birth to be easy; it was not. Having chosen not to insure herself against the very peril which came to pass, she cannot now successfully climb aboard the vehicle she refused to buy a ticket on.
 
 
 25
 AFFIRMED. No costs allowed.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3