432 So.2d 66 (1983)
INDUSTRIAL FIRE & CASUALTY INSURANCE COMPANY, Appellant,
v.
Gerald C. ROMER, Appellee.
Gerald C. ROMER, Appellant,
v.
INDUSTRIAL FIRE & CASUALTY INSURANCE COMPANY, Appellee.
Nos. 80-1011, 80-1767 and 80-1896.
District Court of Appeal of Florida, Fourth District.
April 6, 1983.
Rehearing Denied June 21, 1983.
Nancy Little Hoffmann, P.A., and James W. Dawson of Fazio, Dawson, Steinberg & DiSalvo, Fort Lauderdale, for Industrial Fire & Cas. Ins. Co.
James P. O'Flarity of Law Offices of James P. O'Flarity, P.A., Palm Beach, for Gerald C. Romer.
Larry Klein, West Palm Beach, as amicus curiae.
*67 LETTS, Chief Judge.
In a multi-count complaint filed by an insured, it was alleged that his insurance company had maliciously and wrongfully withheld PIP[1] benefits from him in violation of an affirmative duty to exercise good faith, thereby intentionally causing the insured to suffer severe emotional distress and mental anguish. We omit a lengthy discussion on the endless procedural ins and outs which culminated with the trial court ruling that such a cause of action did exist for both compensatory and punitive damages. We disagree and reverse.
This case began with the beguiling simplicity of a mere $1,420 PIP claim. The insured, a minister, was helping another member of the cloth change a flat tire when the jack slipped and the insured instinctively jumped backwards, injuring his back on the bumper of his own adjacently parked automobile. The insurance company refused to pay the claim and after constant bickering and procedural maneuvering by the parties, both in and out of court, the trial judge directed a verdict in favor of the insurance company. Later, however, he reversed this ruling and the final outcome was a jury verdict for $35,000 compensatory damages and $250,000 punitive damages in favor of the insured.
We begin by observing that Florida law has not recognized a separate tort which would give rise to a claim for compensatory or punitive damages predicated on a mere bad faith refusal by the insurance company to pay a claim.[2] To be sure, some of the cases which we cite for that proposition have diverse factual and procedural backgrounds, but to us the principle remains the same throughout. Bad faith refusal to pay gives rise to a cause of action only if the facts involving the bad faith refusal amount to an independent tort such as fraud or intentional infliction of emotional distress. See Butchikas v. Travelers Indemnity Co., 343 So.2d 816 (Fla. 1976); Allstate Insurance Co. v. Gibbs, 340 So.2d 1202 (Fla. 4th DCA 1976), cert. dismissed 354 So.2d 980 (Fla. 1977); MacDonald v. Penn Mutual Life Insurance Co., 276 So.2d 232 (Fla. 2d DCA 1973), and Hanft v. Southern Bell Telephone and Telegraph Company, 402 So.2d 453 (Fla. 3d DCA 1981). As we said in Henry Morrison Flagler Museum v. Lee, 268 So.2d 434, 436 (Fla. 4th DCA 1972), "where the gravamen of the proceeding is breach of contract, even if such breach be willful and flagrant, there can be no recovery for mental pain and anguish resulting from such breach."
Needless to say, the most important of the above citations is Butchikas, supra, out of the Supreme Court, but we are not completely happy with it. Supposedly, the Supreme Court accepted jurisdiction of Butchikas because the district court version of same was in conflict with its earlier decision in Campbell v. Government Employees Insurance Co., 306 So.2d 525 (Fla. 1974).[3] Yet Justice England proceeded to disavow any conflict and instead distinguished Campbell (which contains general wording which might support an independent action[4]) pointing out that Butchikas "is not like *68 Campbell at all." Despite this uncertainty, the Supreme Court apparently had not changed its mind when it denied review of the First District's Baxter v. Royal Indemnity Company, at 317 So.2d 725 (Fla. 1975), and we are left in little doubt that the conclusion we come to now is the law of this state in all of our courts. But see the Federal District Court holding in Escambia Treating Co. v. Aetna, 421 F. Supp. 1367 (N.D.Fla. 1976).
Apart from Campbell and Butchikas already alluded to, we are cited to two other Florida cases. The amicus brief refers us to World Insurance Co. v. Wright, 308 So.2d 612 (Fla. 1st DCA 1975), in which the First District allowed an emotional distress claim because the conduct not only involved breach of contract but was "tortious." A reading of this disability benefits decision reveals that the insurer therein sought to "buy up" the insured's policy. As we understand it, this act involved an affirmative attempt to convert continued periodic installments of disability benefits into a lump sum pay off. We are not sure, without more facts, whether we would agree with World Insurance or not. However, we distinguish it because it involved not only a negative refusal to pay a claim, but an affirmative effort to subvert and change the terms of an insurance policy. If this World Insurance case is by unhappy circumstance incorrectly distinguished by us, then it is in irreconcilable conflict with an earlier decision from the very same court. See Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged, 317 So.2d 725 (Fla. 1975).
The other case, cited to us by counsel for the insurance company is Miller v. Mutual of Omaha Insurance Co., 235 So.2d 33 (Fla. 1st DCA 1970), which he says stands for the proposition "that the mere telling to the insured that the claim would not be paid, albeit discourteously, created a question of fact to be submitted to the jury." We reject this interpretation of that holding and note the critical fact that the insurance company's agent went to the insured's house and demanded and took away the policy. Once again this action involved much more than a negative refusal to pay and consisted of affirmative steps to wrest away physical control of insurance documents rightfully in the possession of the insured.
Our conclusions may be bolstered by reference to Sections 627.736(4)(c) and 627.428, Florida Statutes (1979). In the first of these two sections, the penalty for nonpayment of a PIP claim within 30 days is set at ten percent interest per annum, while in the latter section, any insured who successfully obtains a judgment against his insurance company, is entitled to attorney's fees. Certainly the Third District's choice of language in Shupack v. Allstate Ins. Co., 367 So.2d 1103, 1104 (Fla. 3d DCA 1979), would appear to suggest that since the statutes create no punitive damages remedy  there is none available.
We also agree with the late Judge Wigginton's analysis of the somewhat comparable uninsured motorist aspect of a policy when he said in Baxter v. Royal Indemnity Co., supra, at 657:
The legal relationship existing between the insured and his insurer on claims for collision damages or damages caused by uninsured motorists is that of debtor and creditor in which no fiduciary relationship is present. It would be a strange quirk in the law to hold that each time a debtor fails or refuses to pay demands made upon it by a creditor, the debtor would be liable for both compensatory and punitive damages even though his failure or refusal was motivated by spite, malice, or bad faith.
We pass at last to an examination of the insurer's particular conduct in this case. First of all, the accident was bizarre. It is, therefore, at least understandable that the insurance company would initially cast a jaundiced eye on such a claim. However, as we have discussed, even deliberate refusal to pay a legitimate claim will not justify a punitive award. A laundry list of the insurance company's misdeeds in this case, include:
(1) failure to pay the claim;
(2) failure of its counsel to show for court proceedings;

*69 (3) delay in satisfying the judgment obtained;
(4) attempts to settle the judgment at a reduced figure;
(5) an allegation in its affirmative defenses that the claim was "spurious";
(6) generally being difficult to get along with.
We are not without sympathy for an insured who is clearly covered by his or her policy, yet encounters stubborn refusal to admit coverage. As the Federal District Court pointed out in Escambia v. Aetna, supra, a policy holder buys insurance coverage, not a potential court battle. Notwithstanding, as we read the cases above cited and many others that we have not recorded here, the instant insurance company's behavior did not rise to the level of dishonest dealing. At worst, it is no more than negligence and deliberate breach of contract.
Accordingly, no independent tort action was alleged or proven in this case. The insured alleged and proved only a wrongful refusal to settle his claim. The verdict for both the compensatory and punitive damages must be reversed. Because our decision is determinative of the result, we have not addressed ourselves to any other points on appeal.
REVERSED AND REMANDED FOR ENTRY OF A JUDGMENT IN ACCORDANCE HEREWITH.
HERSEY, J., concurs.
HURLEY, J., concurs in judgment with opinion.
HURLEY, Judge, concurring in the judgment.
I am troubled by the majority's preoccupation with third party "bad faith" cases. This is a first party case. Moreover, I am constrained to suggest that much of the discussion in the majority opinion is superfluous to the case at bar.
A first party claim is a suit by an insured against his insurance company because of its failure to settle his claim. On the other hand, a third party or "bad faith" claim is a suit by an insured (or his assignee) against his insurance company because of its failure to settle a third party tort claim for a reasonable sum. At least until the adoption of section 624.155, Florida Statutes (Supp. 1982), the distinction between these concepts was of paramount importance.[5] For example, unless an insurance company committed an independent tort against its insured, the only relief available on a first party claim was a cause of action for breach of contract. However, on a third party claim where the insured proved that the insurance company failed to exercise good faith in negotiating for and effecting a settlement of a claim against the insured, the company was liable in tort for compensatory damages. Baxter v. Royal Indemnity Co., 285 So.2d 652 (Fla. 1st DCA 1973), cert. discharged with opinion, 317 So.2d 725 (Fla. 1975). Additionally, if the plaintiff/insured in a third party bad faith case proved that the company engaged in deliberate, overt and dishonest dealing, the insured was entitled to punitive damages. Butchikas *70 v. Travelers Indemnity Co., 343 So.2d 816 (Fla. 1976); Saltmarsh v. Detroit Automobile Inter-Insurance Exchange, 344 So.2d 862 (Fla. 3d DCA 1977).
As I view it, this is a relatively simple case. The plaintiff cannot recover in tort because he has alleged only a wrongful refusal to settle his claim. While this may constitute a breach of contract, it does not amount to a tort. Baxter v. Royal Indemnity Co., supra. Absent proof of an independent tort, the plaintiff is limited to contract remedies. Cf. Lewis v. Guthartz, 428 So.2d 222 (Fla. 1982).
NOTES
[1] Personal Injury Protection.
[2] But see Section 624.155(1)(b)1, Florida Statutes (Supp. 1982) effective October 1, 1982.
[3] Campbell involved a third party claim not a first party claim.
[4] The Campbell court said at page 531:

Compensatory damages do not always fully compensate in grievous situations nor do they have a general salutary effect under prevailing conditions to promote fair treatment of the public. At best, litigation, even when successful is an inconvenience, often an ordeal. Compensatory damages do not sometimes offer reparation for mental invasion. Moreover, it is difficult to translate pain and suffering, disfiguration, loss of enjoyment of life, loss of prospects, into compensatory dollars. Punitive damages tend to bring to punishment types of certain cases of oppressive conduct, i.e., slanders, malice, cruelties; antisocial, unethical and unfair treatment, often criminally unpunishable and which in actual life go unnoticed in the criminal law. "Punitive damages ... are awarded to the injured party as a reward for his public service in bringing the wrongdoer to account," so stated the Mississippi Supreme Court in Neal v. Newburger Co. (1929), 154 Miss. 691, 700, 123 So. 861, 863.
[5] Section 624.155(1)(b)1, Florida Statutes (Supp. 1982), does not apply to this case because it did not become effective until October 1, 1982. However, it provides in pertinent part:

Any person damaged by ... the commission of any of the following by an insurer:
Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests;
may bring a civil action against such insurer. Notwithstanding the provisions of the above to the contrary, any person pursuing a remedy under this section need not prove that such act was committed or performed with such frequency as to indicate a general business practice.
Although it need not be decided here, it is arguable that with the passage of this legislation, Florida has joined the ranks of those states which impose an implied covenant of good faith and fair dealing in insurance contracts. See, e.g., Gruenberg v. Aetna Insurance Co., 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973). If this is so, then proof of a breach of the covenant would permit recovery in tort in first party, as well as third party, insurance claims.