**UNITED GUARANTY RESIDENTIAL INSURANCE COMPANY OF IOWA, an Iowa corporation, Plaintiff,**

v.

**ALLIANCE MORTGAGE COMPANY, a Florida corporation, Defendant.**

No. 85–934–Civ–J–14.

United States District Court, M.D. Florida, Jacksonville Division.

Sept. 26, 1986.

Charles P. Pillans, III and T. Geoffrey Meekin, Bedell, Dittmar, DeVault & Pillans P.A., Jacksonville, Fla., for plaintiff.

John F. Corrigan, Douglas H. Morford, Ulmer, Murchison, Ashby, Taylor & Corrigan, Jacksonville, Fla., and Harold D. Murry, Jr., Clifford & Warnke, Washington, D.C., for defendant.

## OPINION AND ORDER

SUSAN H. BLACK, District Judge.

This case is before the Court on the Plaintiff/Counterclaim Defendant's Motion to Dismiss Count II of Counterclaim of Alliance Mortgage Company, filed herein on February 18, 1986. The defendant filed its response in on March 5, 1986.

In its Counterclaim of January 6, 1986, the defendant Alliance Mortgage Company [hereinafter "Alliance"] sets forth two counts against the plaintiff United Guaranty Residential Insurance Company of Iowa [hereinafter "United"]. The first count alleges that United breached its contracts with the defendant to provide mortgage guaranty insurance. The second count,

---

**8.** *See also Wilson v. Taylor,* 733 F.2d 1539 (11th Cir.1984); *Williams v. City of Valdosta,* 689 F.2d 964 (11th Cir.1982).

about which this motion to dismiss is concerned, alleges that United's not attempting to settle Alliance's claims under their mortgage guaranty insurance contract constituted a violation of. Fla.Stat. § 624.155.

This case presents the question of whether an insured may bring an action against its insurer based solely upon the insurer's bad faith refusal to pay a claim. Under the common law of the State of Florida, an insurer's bad faith refusal to pay a claim gave rise to a cause of action only if it amounted to an independent tort such as fraud or intentional infliction of emotional distress. *Smith v. Standard Guaranty Insurance Co.*, 435 So.2d 848 (Fla. 2d DCA 1983). The defendant-counterclaimant, Alliance, contends that the enactment of Fla. Stat. § 624.155(1)(b)1 in 1982 altered the common law on this subject by removing the requirement of an independent tort. Although there are no controlling Florida decisions which interpret subsection (1)(b)1,[1] this Court agrees with Alliance that the plain language of the statute provides a remedy for insureds who are injured by their insurer's bad faith refusals to settle their claims.

Fla.Stat. § 624.155 states in pertinent part that:

(1) Any person may bring a civil action against an insurer when such person is damaged:

. . . .

(b) By the commission of any of the following acts by the insurer:

1. Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.

In resolving the dispute over the meaning of this statute, the Court must ascertain and give effect to the intent of the legislature. *St. Petersburg Bank & Trust Co. v. Hamm*, 414 So.2d 1071 (Fla.1982). That intent is determined primarily from the language of the statute. *Id.*

Under the "plain meaning" rule of statutory construction, the party challenging the application of the plain meaning of a statutory provision must show either that some other section of the act expands or restricts its meaning, that the provision itself is repugnant to the general purview of the act, or that the act considered *in pari materia* with other acts, or with the legislative history, imports a different meaning. *Englewood Water District v. Tate*, 334 So.2d 626 (Fla. 2d DCA 1976). If the challenging party can show no such reason for departing from the unambiguous meaning of the statute, the Court must give effect to that meaning. *Id.*

In the present case, United has not shown that an application of the plain meaning of section 624.155(1)(b)1 would violate the letter or spirit of the statutory scheme. United argues that because subsection (1)(b)1 does not expressly include first party actions within its terms, it must be construed to simply codify the established Florida law as to third party ac-

---

1. In *Industrial Fire & Casualty Insurance Co. v. Romer*, 432 So.2d 66 (Fla. 4th DCA 1983), the court recognized the common law rule which precluded a cause of action based on a mere bad faith refusal of the insurer to pay a claim. In a corresponding footnote, the court stated, "But see Section 624.155(1)(b)1, Florida Statutes (Supp.1982) effective October 1, 1982." Although this statement was clearly dictum (the statute was not yet effective during the applicable time period), the court arguably sought to highlight a change in the prevailing law. *See also Romer*, 432 So.2d at 69 (Hurley, J., concurring) ("[I]t is arguable that with the passage of this legislation, Florida has joined the ranks of those states which impose an implied covenant

of good faith and fair dealing in insurance contracts.").

In *Rowland v. Safeco Insurance Co. of America*, 634 F.Supp. 613 (M.D.Fla.1986), a federal district court held that the plaintiffs-insureds were entitled under section 624.155(1)(b)1 to bring an action against their insurer for a mere bad faith refusal to pay. In addition to *Romer*, Judge Melton cited legislative history which indicated an intent to provide for a cause of action based on the insurer's bad faith failure to settle the claims of the insured. Because this Court is bound to follow the law of the State of Florida, *Rowland* can only be seen as persuasive authority in the present case.

tions.[2]  Yet the plain and unambiguous language of (1)(b)1 ("not attempting in good faith to settle claims ...") reaches *all* claims, not only third party claims.  United provides no authorities to contradict this plain reading of the statutory language.[3]

An interpretation of subsection (1)(b)1 as covering both first party and third party bad faith actions is consistent with the general scheme of section 624.155.  The language of section 624.155 indicates that the overall purpose of the legislature was to impose civil liability on insurers who act inequitably vis-a-vis their insureds, not simply to restate or clarify the common law.  For example, subsection (1)(a), which incorporates certain enumerated provisions of Chapter 626, Part VIII, of the Florida Statutes ("Unfair Insurance Trade Practices"), is clearly intended to create civil liability where none had attached before.  Likewise, subsection (3) alters Florida's common law by providing for the recovery by the plaintiff of reasonable attorney's fees.

In its motion to dismiss, United notes that, under subsection (1)(a), insurers may be held liable for certain "unfair claims settlement practices" described in Fla.Stat. 626.9541(1)(i).  It argues that the legislature's failure to include within this category actions based on bad faith refusals to settle demonstrates that it did not intend to create a civil remedy for first party bad faith.  This argument carries little weight, however, because subsection (1)(b) is set apart from subsection (1)(a) with the disjunctive term "or".  A claim of first party bad faith under (1)(b) may logically be seen as an alternative to any "unfair claims settlement" remedy provided for under (1)(a).  The Court finds that United derives unwarranted implications from the incorporation of section 626.9541(1)(i) into section 624.155.

United argues that Florida law requires courts to strictly construe statutes in derogation of common law.  It contends that the Court must infer that the statute in dispute was not intended to make any alteration in the common law because no such alteration was plainly pronounced in clear unequivocal terms.

---

**2.** A third party action is one brought by an insured against his insurer because of its failure to settle a third party tort claim for a reasonable sum.  Where the insurer breaches his duty to settle with the third party where a reasonably prudent person would do so, and the wrongful refusal to settle exposes the insured to liability in an amount in excess of the policy limits, Florida courts have consistently recognized the insured's right of recovery. *See, e.g., Florida Physicians Insurance Reciprocal v. Avila,* 473 So.2d 756 (Fla. 4th DCA 1985).  Third party bad faith actions must be distinguished from first party actions, such as the present case, where the insurer is charged with refusing in bad faith to settle with the insured.

**3.** United argues in its motion to dismiss that because the language of section 624.155(1)(b)1 is similar to that used by the courts in describing the insurer's duty in third party contexts, *see Florida Physicians Insurance Reciprocal v. Avila,* 473 So.2d 756 (Fla. 4th DCA 1985), the rationale of 624.155(1)(b)1 must likewise correspond with the case law.

Under the rationale of Florida's third party bad faith decisions, because the insurer has the right to completely control the defense and acts as attorney-in-fact on behalf of the insured, a duty of good faith arises out of the insurer-insured relationship. *Baxter v. Royal Indemnity Co.,* 285 So.2d 652 (Fla. 1st DCA 1973), *cert. dis-*

*charged,* 317 So.2d 725 (Fla.1975).  In contrast, the insurer and its "first party" claimant occupy the status of debtor and creditor and stand at arms-length with respect to claims arising out of the insurance contract. *Id.*

United aptly describes the policy rationale which has guided the Florida courts in establishing separate rules for first party and third party bad faith claims.  However, it fails to show that this rationale was the motivating factor behind the enactment of section 624.-155(1)(b).  There are strong public policy arguments in favor of imposing a duty on insurers to deal fairly with their "first party" claims as well.  The prevailing law in other jurisdictions implies a covenant of good faith and fair dealing in the insurance contract and allows the insured a first party action against the insurer for any bad faith refusal to settle the insured's claim.  Ashley, *Aetna Life Insurance Co. v. Lavoie: The Bad Faith Case of the Decade?,* Bad Faith Law Report, Vo. I, No. 5, Oct. 1985.  The cases which explain the basis for Florida's common law rules are therefore not persuasive in demonstrating legislative intent.  Without the aid of legislative history, the Court will not inquire into the competing policies to determine which ultimately motivated the statutory enactment.

Although United correctly states the current Florida law, *see Allstate Mortgage Corp. of Florida v. Strasser,* 277 So.2d 843, 845 (Fla. 3d DCA 1973), *aff'd,* 286 So.2d 201 (Fla.1973), the Court need not resort to this or any other rule of statutory construction in the present case.[4] Where the words used by the legislature are clear and convey a definite meaning, Florida courts need not resort to rules of statutory construction. *Kokay v. South Carolina Insurance Co.,* 380 So.2d 489 (Fla. 3d DCA 1980), *aff'd,* 398 So.2d 1355 (Fla.1980). *See also Department of Legal Affairs v. Sanford-Orlando Kennel Club, Inc.,* 434 So.2d 879 (Fla.1983) (courts look to legislative history only to resolve statutory ambiguities).

Because the plain language of section 624.155(1)(b)1 permits a first party bad faith action against the insurer, and because United has not provided any sound basis for departing from the statute's plain meaning, the Court will deny United's motion to dismiss Count II of the Counterclaim.

Accordingly, it is

ORDERED that Plaintiff/Counterclaim Defendant's Motion to Dismiss Count II of the Counterclaim of Alliance Mortgage

Company, filed herein on February 18, 1986, is denied.

---

4. Although the Court need not resort to the rules of statutory construction, it notes for purposes of clarification its disagreement with United's application of the rule for statutes in derogation of common law. United contends that the legislature's intention to alter the common law is not "plainly pronounced" because it did not expressly include first party actions. However, Florida courts presume that the legislature is fully cognizant of the case law governing subjects on which it is legislating. *Ford v. Wainwright,* 451 So.2d 471 (Fla.1984). By opting *not* to exclude first party actions from the broad coverage of subsection (1)(b)1 while fully aware of the majority rule permitting such actions, the legislature unequivocally stated that *all* bad faith refusals to settle would be actionable.

Other rules of statutory construction also support the Court's result. For example, the rule requiring remedial statutes to be construed liberally in favor of the party for whose benefit the statute was enacted would require a finding of statutory coverage in this case. *See, e.g., Canada Dry Bottling Co. v. Meekins, Inc. of Dade*

*County,* 219 So.2d 439 (Fla. 3d DCA 1969). Likewise, the rule that requires a presumption of substantive change whenever the legislature amends a statute would preclude a finding that the legislature merely sought to codify the common law rule relating to third party actions. *See, e.g., Seddon v. Harpster,* 403 So.2d 409 (Fla.1981).

Relevant legislative history also supports the Court's result. A 1982 Staff Report to the House Committee on Insurance states that,

[Section 624.155] requires insurers to deal in good faith to settle claims. Current case law requires this standard in liability claims, but not in insured motorist coverage; the sanction is that a company is subject to a judgment in excess of policy limits. This section would apply to all insurance policies.

Staff Report, 1982 Insurance Code Sunset Revision (HB 4F; as amended HB 10G) (June 3, 1982). This language demonstrates that the legislature intended to extend the liability of insurers from bad faith claims arising out of liability insurance policies (third party actions) to bad faith claims arising out of *any* insurance policy.