Thomas F. JONES, as Personal Representative of the Estate of Karen Sue Jones, Deceased, Thomas F. Jones, individually, and Mary Ann Jones, individually, Plaintiffs,

v.

CONTINENTAL INSURANCE COMPANY, a foreign corporation, Defendant.

No. 86–1922–Civ.

United States District Court,
S.D. Florida.

Sept. 22, 1987.

Robert J. Dickman, Robert J. Dickman, P.A., Coral Gables, Fla., Sam Daniels, Elizabeth K. Clarke, Daniels & Hicks, P.A., Miami, Fla., for plaintiffs.

Scott R. McNary, Corlett, Killian, Hardeman, McIntosh & Levi, P.A., Miami, Fla., for defendant.

## MEMORANDUM OPINION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

ARONOVITZ, District Judge.

THIS CAUSE is presently before the Court upon Defendant's Motion to Dismiss Plaintiffs' Complaint. The Court has reviewed Defendant's Motion, responses thereto, entertained arguments of counsel, reviewed pertinent portions of the record and considered applicable law and makes the following rulings based thereon.

### JURISDICTION

The Court's jurisdiction over the subject matter of this action is based upon diversity of citizenship between the parties pursuant to the provisions of 28 U.S.C. Section 1332.

### STATEMENT OF THE CASE

Plaintiffs' Complaint is in four counts: Count I alleges breach of good faith duty to promptly settle Plaintiffs' claims, based on Florida Statutes Section 624.155; Count II alleges intentional infliction of emotional distress; Count III claims tortious breach of contract; and Count IV is entitled "punitive damages." Defendant has moved to dismiss all counts of the Complaint. Defendant's argument as to each count will be taken up in turn.

Initially, Plaintiffs' Complaint alleges the following set of facts. The individual Plaintiffs, Thomas F. Jones and Mary Ann Jones, are the parents of Karen Sue Jones, who was involved in a fatal car accident in January of 1984. Thomas F. Jones is also a named plaintiff on behalf of his daughter's estate. At the time of this unfortunate accident, Thomas F. Jones, Mary Ann Jones and Karen Sue Jones were covered persons under an automobile liability insurance policy which insured two vehicles owned by Thomas F. Jones. The subject accident involved two uninsured, or underinsured, motorists such that the uninsured

motorist provisions of the Jones policy were triggered. When coverage for the two insured vehicles is "stacked," the subject policy provides coverage up to a maximum of $600,000.

Plaintiffs made demand upon Defendant for $600,000, which was rejected by the Defendant. Plaintiffs then proceeded to arbitrate the dispute in accordance with the terms of the policy. On the eve of the arbitration hearing, Defendant offered $500,000 to settle, which offer was rejected by the Plaintiffs. The arbitration panel ultimately awarded $500,000 to Plaintiff Thomas F. Jones and $500,000 to Plaintiff Mary Ann Jones. Thereafter, a state court entered judgment in Plaintiffs' favor in the amount of $600,000.

Plaintiffs allege in this suit that Continental's rejection of their offer to settle for the policy limits was done in bad faith with the intent to cause extreme emotional distress and they seek damages in the amount of the difference between the arbitration award and the state court judgment, together with punitive damages as to certain counts.[1]

## DISCUSSION

### I. Count I—Florida Statutes Section 624.155

Plaintiffs' Complaint contains a veritable litany of alleged actions on Continental's part which they allege violate the terms of Florida Statutes Section 624.155.

Essentially, Plaintiffs claim that Continental knew the accident was in no way their daughter's fault; that it knew the damages were well in excess of the policy limits; that it knew the plaintiffs were peculiarly susceptible to emotional distress because of the death of their daughter; that it did not conduct a proper investigation of the claim before refusing Plaintiffs' offer and that these acts constituted a course of dealing on the part of Continental to hold on to their money for as long as possible, even though it knew Plaintiffs

were entitled to payment of the policy limits.

Although, unfortunately, Plaintiffs' Complaint fails to state the specific subsections of Florida Statutes Section 624.155 upon which it is intending to rely, the allegations of the Complaint appear to attempt to state a claim under two subsections, namely: Section 624.155(1)(a)(1) (incorporating by reference Section 626.9541(1)(i) "Unfair Claim Settlement Practices"), which makes it illegal for an insurance company to fail to adopt and implement standards for the proper investigation of claims and denying claims without conducting reasonable investigations based upon available information; and Section 624.155(1)(b)(1), which provides:

> Not attempting in good faith to settle claims when, under all the circumstances, it could and should have done so, had it acted fairly and honestly toward its insured and with due regard for his interests.

Defendant has not challenged Count I of Plaintiffs' Complaint insofar as it may state a claim under Section 624.155(1)(a)(1); therefore, that issue is not before the Court. All of the Defendant's arguments have centered on Section 624.155(1)(b)(1).

In this regard, Defendant argues that Section 624.155(1)(b)(1) does not apply to first party causes of action, that it is unconstitutionally vague and overbroad or, in the alternative, that Plaintiffs have failed to state a claim for relief.

### a. Whether Florida Statutes Section 624.155(1)(b)(1) Applies to First Party Actions

Although this statute was enacted in 1982, there are, surprisingly, no Florida cases directly interpreting Section 624.-155(1)(b)(1). This Court, therefore, as one whose jurisdiction is based on diversity, is faced with the somewhat difficult task of predicting what a Florida court would do in like situation. *Delduca v. United States Fidelity & Guaranty Co.*, 357 F.2d 204

---

1. Nothing contained in this Opinion shall constitute any expression as to the appropriate measure of damages in this case.

(5th Cir.1966); *Morton v. Abbott Laboratories*, 538 F.Supp. 593 (M.D.Fla.1982).[2]

As one court has stated it:

Although some have characterized this assignment as speculative or crystal-ball gazing, nonetheless it is a task which we may not decline.

*McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657 (3d Cir.1980). In attempting to predict Florida law, the Court may utilize all reliable resources, including decisions of intermediate state courts, policies underlying the applicable legal principles, doctrinal trends indicated by those policies, treatises, restatements, and law review articles. *Weiss v. United States*, 787 F.2d 518 (10th Cir.1986); *Nicholson v. Life Ins. Co. of Southwest*, 783 F.2d 1316 (5th Cir. 1986).[3]

By way of background, Florida has consistently recognized a common law cause of action for bad faith within the context of third party actions, i.e., liability insurance. *Boston Old Colony Ins. v. Gutierrez*, 386 So.2d 783, 785 (Fla.1980). The duty of good faith has been implied in law in the third party case because there is said to exist a fiduciary relationship between the insured and his insurance company—the insurance company is contractually obligated to place the insured's interests (which is to avoid an excess judgment) before its own (which is to pay as little as possible). The risk for abuse is apparent.

However, as is argued by Defendant here, no such fiduciary relationship exists between an insurance company and its insured in the first party context where the insured is seeking payment of his own claim from the insurance company. In this instance, Defendant argues, the relationship between the insurance company and its insured is adversarial. Each party's obligations to the other are defined and limited by the terms of the insurance contract itself.

Prior to this statute's enactment, it is clear that Florida expressly rejected a common law duty of good faith in the first party context. *Baxter v. Royal Indemnity Company*, 285 So.2d 652 (Fla. 1st DCA 1973), *cert. dis.* 317 So.2d 725 (Fla.1973) (discharging appeal, by an evenly-divided Court, as not involving a decision in direct conflict with other decisions).[4] Like the present dispute, *Baxter* involved a dispute over coverage under the uninsured motorist provisions of a liability policy. Moreover, similar to the instant action, the insurance company in *Baxter* allegedly acted in bad faith in refusing to pay on demand the full policy limits under the contract and insisting instead to pursue its contractual right to arbitrate.[5]

The First District Court of Appeal, deferring to the parties' rights to freely contract, held that because there is no fiduciary relationship between insured and insurer outside of the third party context, an insurance company could not be held liable in an amount exceeding the policy limits for failure to pay under the terms of the policy, even though the failure or refusal to

---

**2.** Unfortunately, United States District Courts in Florida are not vested with the authority to certify questions of undecided Florida law directly to the Florida Supreme Court, although there is presently such a procedure for certification from the United States Eleventh Circuit Court of Appeals to the Florida Supreme Court. Had such a procedure been available to this Court, the Court would have immediately certified the question of Florida Statutes Section 624.155(1)(b)(1) to the Florida Supreme Court.

**3.** There has been a considerable amount of commentary discussing the difficulty of federal courts in ascertaining state law and the inherent *Erie* considerations. *See, e.g.,* Kurland, *Mr. Justice Frankfurter, The Supreme Court and the Erie Doctrine in Diversity Cases,* 67 Yale L.J. 187 (1957); Note, *Federal Interpretation of State Law—an Argument for Expanded Scope of Inquiry,* 53 Minn.L.Rev. 806 (1969). The *Erie* Court expressly intended for federal courts to follow the law of each state whether it "be declared by its legislature or by its highest court in a decision." *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938).

**4.** *See also Kent Insurance Co. v. Hassan,* 447 So.2d 323 (Fla. 4th DCA 1984); *Smith v. Standard Guaranty Ins. Co.,* 435 So.2d 848, 849 (Fla. 2d DCA), *pet. for rev. den.,* 441 So.2d 633 (Fla. 1983); *Midwest Mutual Ins. Co. v. Brasecker,* 311 So.2d 817 (Fla. 3d DCA 1975).

**5.** In this case, unlike *Baxter,* it was the Plaintiffs who ultimately requested that the case proceed to arbitration—not the insurance company.

pay was motivated by spite, malice or bad faith. 285 So.2d at 656–57.[6] In doing so, the court discussed the then-recent case of *Richardson v. Employers Liab. Assur. Corp.*, 25 Cal.App.3d 232, 102 Cal.Rptr. 547 (1972) wherein a California appellate court held that the failure of an insurance company to deal fairly and in good faith with its insured breached a duty imposed by law, not one arising from the terms of the contract itself, which breach constitutes a tort.

Unlike Florida at the time *Baxter* was decided, however, California had in effect a statute which permitted the recovery under certain circumstances "[i]n an action for the breach of an obligation not arising from contract...." 25 Cal.App.3d at 245, 102 Cal.Rptr. 547, quoted in *Baxter*, 285 So.2d at 657. After acknowledging *Richardson*, the *Baxter* court concluded: "Because of the existence of the above-quoted statute which has no counterpart in the law of Florida, the decision reached by California in *Richardson* is inapplicable here." 285 So.2d at 657.[7] *Baxter* can be read, then, as expressly limited to the rejection of a common law duty of good faith and fair dealing.

The question is whether the statute at issue imposes such a duty upon insurance companies. Although there are no Florida cases interpreting the statute, there have been two district court decisions which have held that Florida Statutes Section 624.155(1)(b)(1) does provide a cause of action within the first party context. *Rowland v. Safeco Ins. Co. of America*, 634 F.Supp. 613 (M.D.Fla.1986); *United Guaranty Residential Ins. v. Alliance Mortgage Co.*, 644 F.Supp. 339 (M.D.Fla.1986).

The entire legislative history on this statute, relied upon by the courts in *Rowland* and *United Guaranty*, states as follows:

[Section 624.155] requires insurers to deal in good faith to settle claims. Current case law requires this standard in liability claims, but not in insured motorist coverage; the sanction is that a company is subject to a judgment in excess of policy limits. This section would apply to all insurance policies.

Staff Report, 1982 Insurance Code Sunset Revision (HB 4F; as amended HB 10G) (June 3, 1982), as cited in *United Guaranty*, 644 F.Supp. at 342, n. 4. The district court in *United Guaranty* concluded:

This language demonstrates that the legislature intended to extend the liability of insurers from bad faith claims arising out of liability insurance policies (third party actions) to bad faith claims arising out of *any* insurance policy.

*Id.* Because this Court is bound to follow Florida law on this issue, the two district court cases that have thus far construed Section 624.155 can only be considered persuasive, and not binding, authority. However, the Court finds these decisions to be well-reasoned and persuasive.

Aside from the legislative history, sparse though it may be, the overall structure of the statute also supports the argument that Section 624.155 (1)(b)(1) is meant to apply to first party actions. For example, Section 624.155(1)(b)(3) states: "Except as to liability coverages,...." The fact that the legislature saw fit to specifically exclude liability insurance (third party insurance) from one of the provisions of the statute indicates that the statute is meant to apply to all kinds of insurance.

Further, a review of the rapid developments in bad faith insurance law in the first party context around the country at large post-*Baxter* and post-*Richardson* adds additional support to the conclusion that the Florida legislature intended to pro-

---

**6.** *But see Evans v. Florida Farm Bureau Casualty Ins. Co.*, 384 So.2d 959 (Fla. 1st DCA 1980) (holding, in an uninsured motorist situation, that the insurance company *has* a duty to act reasonably with its insured where the insured is not attempting to settle a claim with the insurance company, but is attempting instead to obtain consent from the insurer to settle with the uninsured tortfeasor pursuant to the terms of the policy).

**7.** The court went on to say, further, that "to the extent of any similarities between the legal and factual situation present in *Richardson* and that present in the case sub judice, we can only say that we do not approve the rule of law pronounced therein and elect not to adopt it as the law of Florida." 285 So.2d at 657.

vide a first party cause of action where one did not exist before. Following California's lead, approximately 28 states currently recognize a bad faith cause of action in a first-party context.[8] It appears, then, to be a clear trend in the law to recognize a good faith duty within the first party context.[9]

■ Finally, although no Florida court has yet directly considered Florida Statutes Section 624.155(1)(b)(1), at least one Florida court has commented in dicta that it is indeed plausible that:

> with the passage of this legislation, Florida has joined the ranks of those states which impose an implied covenant of good faith and fair dealing in insurance contracts, *See, e.g., Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 108 Cal. Rptr. 480, 510 P.2d 1032 (1973) ... and permit recovery in tort in first party, as well as third party, insurance claims.

*Industrial Fire & Casualty Ins. Co. v. Romer,* 432 So.2d 66, 69 n. 5 (Fla. 4th DCA) (Hurley, J. concurring), *rev. denied,* 441 So.2d 633 (Fla.1983). In the absence of an authoritative pronouncement from Florida courts, considered dicta may be followed, together with all other reliable sources, in ascertaining state law. *Fehlhaber v. Fehlhaber,* 681 F.2d 1015 (5th Cir.1982), *reh'g denied,* 702 F.2d 81 (5th Cir.1983), *cert. denied,* 464 U.S. 818, 104 S.Ct. 79, 78 L.Ed. 2d 90 (1983); *Korzetz v. Amsted Industries, Inc.,* 472 F.Supp. 136 (D.C.Mich. 1979).

■ Considering all available reliable indicia, the Court concludes that the Florida legislature has, while fully cognizant of the status of Florida's common law at the time of enactment,[10] provided a statutory cause of action for bad faith within the context of first party claims.[11]

### b. *Whether Florida Statutes Section 624.155(1)(b)(1) is Unconstitutionally Vague or Overbroad*

Defendant next advances two constitutional attacks against the facial validity of Florida Statutes Section 624.155(1)(b)(1). Defendant argues that the phrase "with due regard for his interests" contained within Section 624.155(1)(b)(1) is unconstitutionally vague because it is not defined within the statute and has never been used in reference to a failure by an insurer to act in good faith toward its insured. Defendant states that the language used does not by itself provide sufficient definite warning of the proscribed conduct to meet constitutional standards.

Defendant further argues that the subject statute is overbroad. With respect to this argument, Defendant contends that the above-quoted phrase, if taken to its logical extreme, would require an insurance company to forfeit any and all of its own contractual rights under the insurance policy and require instead that the insurance company consider only the insured's "best interests."[12]

8. *See* S. Ashley, *Bad Faith Actions Liability and Damages,* Appendix II "State-by-State Summary of Bad Faith Law" (1984) (together with 1987 cumulative supplement). Iowa has expressly left the issue open. Twelve jurisdictions appear to reject the first party cause of action. Illinois decisions are sharply split. *Id.,* § 2:22 of 1987 Supplement at 8 and cases cited therein.

9. *See Florum v. Elliott Mfg. Co.,* 629 F.Supp. 1145 (D.Colo.1986) (considering general trend on law in predicting how state court would describe issue at hand).

10. Florida courts presume that the legislature is aware of the case law pertaining to matters it is legislating. *Ford v. Wainwright,* 451 So.2d 471 (Fla.1984).

11. *See also* W. Shernoff, S. Gage & H. Levine, *Insurance Bad Faith Litigation* § 6.04(3) (1986) wherein the author states:

> One state, Florida, has enacted statutory provisions expressly authorizing a private civil action for damages against an insurer who commits various unfair claims settlement practices [footnote citation to Fla.Stat. § 624.155]. The enactment of this statutory remedy is particularly important because the Florida appellate courts have previously shown reluctance to recognize a common law tort cause of action for bad faith failure to pay insurance claims.

12. Normally, "overbreadth" refers to a challenge to a statute on the constitutional ground that it achieves its governmental purpose to control or prevent activities properly subject to regulation by means that sweep too broadly in an area of constitutionally protected freedom. *State v. Gray,* 435 So.2d 816 (Fla.1983). Although not specifically articulated as such, it is presumed that Defendant is contending that

Statutes may be void for vagueness if the plain language does not convey sufficient definite warning of the proscribed conduct when measured by common understanding and practice. *Roth v. United States,* 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed. 2d 1498 (1957); *Newman v. Carson,* 280 So.2d 426 (Fla.1973); *Zachary v. State,* 269 So.2d 669 (Fla.1972); *Orlando Sports Stadium, Inc. v. State ex rel. Powell,* 262 So.2d 881 (Fla.1972). Due process is not complied with where a statute "forbids or requires the doing of an act in terms so vague that a man of common intelligence must guess at its meaning." *Cline v. Frink Dairy Company,* 274 U.S. 445, 47 S.Ct. 681, 71 L.Ed. 1146 (1927); *State v. Llopis,* 257 So.2d 17 (Fla.1971). Whether the language used in a statute is ambiguous may depend on whether the language has sufficient well established meaning either in common law, federal law, or trade usage. *See Department of Legal Affairs v. Rogers,* 329 So.2d 257 (Fla.1976).

In a commercial setting such as this, the standard for determining vagueness is a lesser standard than that required when reviewing a criminal statute. The principal inquiry in a commercial setting is whether the law affords fair warning of what is proscribed. *Village of Hoffman Est. v. Flipside,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Brockert v. Skornicka,* 711 F.2d 1376 (7th Cir.1983). Additionally, legislative acts which adjust the burdens or benefits of economic life, such as is presently before the Court, come to the Court with a presumption of constitutionality. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). If a statute can be made constitutionally definite by reasonable construction, the Court is under a duty to give it such a construction. *United States v. Thomas,* 567 F.2d 299 (5th Cir. 1978).[13]

The language of Section 624.155(1)(b)(1) tracks the language of Florida's Standard Jury Instruction entitled "Insurer's Bad Faith Failure to Settle Within Policy Limits," which provides:

> The issue for your determination is whether (defendant) acted in bad faith in failing to settle the claim of (name) against (insured). An insurance company acts in bad faith in failing to settle a claim against its [policyholder] [insured] within its policy limits when, *under all of the circumstances, it could and should have done so, had it acted fairly and honestly toward its [policyholder] [insured] and with due regard for his interests.*

Fla.S.J.I. (Civ) MI 3.1 (emphasis added). *See also* Fla.S.J.I. (Civ) MI 3.2.

As Plaintiffs point out, Florida's standard jury instructions have been approved by the Florida Supreme Court as a correct statement of Florida law on the subject. There are, therefore, cases from which the principles contained therein were gleaned. The comments to the above-quoted Florida jury instruction direct the reader to two cases, both involving third party causes of action: *Butchikas v. Travelers Indemnity Co.,* 343 So.2d 816 (Fla.1976); *Campbell v. Government Employees Ins. Co.,* 306 So. 2d 525 (Fla.1974). The general rule of law which emerges from these cases is that an insurance company may be held liable for damages in excess of policy limits where the insurance company has engaged in concealment, misrepresentation, deliberate, overt and dishonest dealing toward its insured.

Defendant contends that the subject jury instruction and case law from which the instruction was drawn are irrelevant to the present inquiry because those cases involve third party causes of action in which a fiduciary relationship was present. Indeed, it cannot be denied that Florida Jury In-

---

the subject statute may unconstitutionally impinge upon its freedom to contract. While there is no absolute freedom of contract, freedom is the general rule, and any restraint imposed by legislation on a right to contract must not be arbitrary or unreasonable. *Larson v. Lesser,* 106 So.2d 188 (Fla.1958).

**13.** *See also Buckley v. Valeo,* 424 U.S. 1, 96 S.Ct. 612, 46 L.Ed.2d 659 (1976) (warning that courts are under an obligation to construe a statute, if that can be done consistent with the legislature's purpose, to avoid the "shoals" of vagueness).

struction MI 3.1 is clearly tailored to apply to third party cases. However, given the fact that the legislature intended to provide a cause of action for bad faith within the context of first party claims, as discussed above, while utilizing language normally reserved for use within the context of third party claims, it is clear that the legislature intended for the full contours of the statute to be determined by reference to general principles of Florida insurance law that could be equally applicable in the first party context.

A review of Florida insurance law [14] reveals that the following principles are deeply entrenched therein and may provide guidance in interpreting the subject statute. For example, it has been held that an insurer has a duty to use the same degree of care and diligence as a person of ordinary care and prudence should exercise in the management of his own business. *Auto Mutual Indemnity Co. v. Shaw*, 134 Fla. 815, 184 So. 852 (1938).[15] Further, the duty of good faith involves diligence and care in the investigation and evaluation of the claim against the insured. *American Fidelity and Casualty Co. v. Greyhound Corp.*, 258 F.2d 709 (5th Cir.1958); *De-Laune v. Liberty Mutual Ins. Co.*, 314 So.2d 601 (Fla. 4th DCA 1975). *See also Chaachou v. American Central Insurance Co.*, 241 F.2d 889 (5th Cir.1957) (interpreting Florida law and holding that an insurance contract creates a relationship requiring the utmost of good faith and fair dealing between the parties). The principles drawn from these cases, each of which were part and parcel of Florida insurance law at the time of Florida Statutes Section 624.155(1)(b)(1)'s enactment, could have equal application in the first party context.

The exact portion of the statute with which Defendant takes exception, "with due regard for the interests of the insured," can be found in the case of *Boston*

*Old Colony Ins. Co. v. Gutierrez*, 386 So. 2d 783 (Fla.1980), which involved a third party cause of action. In stating the proper standard for determining bad faith in that context, the Florida Supreme Court stated:

. For when the insured has surrendered to the insurer all control over the handling of the claim, including all decisions with regard to litigation and settlement, then the insurer must assume a duty to exercise such control and make such decisions *in good faith and with due regard for the interests of the insured.*

*Id.* at 785 (emphasis added), *citing Liberty Mutual Ins. Co. v. Davis*, 412 F.2d 475 (5th Cir.1969). The court went on to note that "[t]he question of failure to act in good faith with due regard for the interests of the insured is for the jury." *Id., citing Campbell v. Government Employees Ins. Co.*, 306 So.2d 525 (Fla.1974).

The question of "due regard for the interests of the insured," then, has been recognized by the Florida Supreme Court as a factual issue, dependent upon the facts of the particular case. "Due" regard implies a varying level or degree of regard as appropriate under the totality of the facts presented. The relationship between the insurer and insured, whether fiducial or adversarial, would be one factor to be considered by the trier of fact in determining whether the insurance company had breached a duty of good faith.

Contrary to Defendant's assertions, it is possible to construe Florida Statutes Section 624.155(1)(b)(1) utilizing case law in existence at the time of the statute's enactment. Further, the Court is not persuaded by the Defendant's argument, as above noted, that "due regard" requires the insurance company to completely forego or ignore its legitimate rights under the insurance policy in favor of the insured's rights.

---

14. This discussion of Florida law is not meant as an exhaustive treatment, but is meant merely to rebut the Defendant's argument that there are *no* Florida cases which could be utilized to interpret the statute at issue.

15. This standard appears to comport with the standard for bad faith in Wisconsin. *See*

*Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978). *Cf. Hendren v. Allstate Ins. Co.*, 100 N.M. 506, 672 P.2d 1137 (App.1983) (recognizing a duty to deal fairly and honestly as to the terms of the policy and not overreach the insured, despite its adversary interest).

For these reasons, the Court concludes that Florida Statutes Section 624.155(1)(b)(1) is not unconstitutionally vague or overbroad.

### c. Whether Plaintiff has Failed to State a Claim Under Florida Statutes Section 624.155(1)(b)(1)

█ Defendant next contends that Plaintiff has failed to state a claim for relief under Florida Statutes Section 624.-155(1)(b)(1). According to the Defendant, the Complaint demonstrates only that Continental exercised its contractual right to demand arbitration, a right sanctioned by the Florida Arbitration Code, Chapter 682, Florida Statutes.

Critical to the elements of a bad faith cause of action in a third party case, regardless of the exact standard adopted, are knowledge and/or delay on the insurance company's part. At the point in time when liability has become reasonably clear, failure to pay may subject the insurance company to a judgment in excess of the policy limits. *See, e.g., Spencer v. Aetna Life & Casualty Ins. Co.*, 227 Kan. 914, 611 P.2d 149 (1980); *Anderson v. Continental Ins. Co.*, 85 Wis.2d 675, 271 N.W.2d 368 (1978); *Gruenberg v. Aetna Ins. Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (1973). It is this delay in payment, without cause, that deprives the insured of the benefit of the bargain. *Kanne v. Connecticut General Life Ins. Co.*, 607 F.Supp. 899 (D.C. Cal.1985), *citing Austero v. National Gas Co.*, 84 Cal.App.3d 1, 30, 148 Cal.Rptr. 653, 672 (1978). Florida courts have likewise recognized the element of timeliness within a third party context. *Campbell v. Government Employees Insurance Co.*, 306 So.2d 525 (Fla.1975) (upholding trial court's determination of bad faith based on the total failure of the insurer to timely consider the interest of the insured while considering settlement offers and concealing from the insured the offer made after trial and misrepresenting the gravity of the claim).

It would be an illogical anomaly to permit an insurance company to proceed to arbitration even though it knew prior to arbitration that it had no reasonable defense to payment, while holding another insurance company liable for bad faith for proceeding to trial when it knew prior to trial that liability was reasonably clear. The damages to the insured would be the same in either case and the policy reasons for imposing bad faith liability would be easily thwarted.

Two California cases have held that bad faith existed despite arbitration clauses. In *Richardson v. Employers Liab. Assur. Corp.*, 25 Cal.App.3d 232, 239, 102 Cal. Rptr. 547 (1972), the court determined that bad faith existed where the defendant forced plaintiff to proceed to an arbitration hearing on a claim against which it already knew it had no defense. Likewise, in *Neal v. Farmers Ins. Exchange*, 21 Cal.3d 910, 148 Cal.Rptr. 389, 582 P.2d 980 (1978), the plaintiff made a settlement offer prior to arbitration which was not accepted by the insurance company. The California Supreme Court held that the insurance company proceeded in bad faith when it knew at an early date that it had no colorable defense.

Based on the foregoing, the Court concludes that Plaintiff has stated a claim for relief under Florida Statutes Section 624.-155(1)(b)(1).[16]

### II. Count II—Intentional Infliction of Emotional Distress

█ Defendant has moved to dismiss Count II of Plaintiff's Complaint on the basis that under Florida law, Plaintiff has alleged no facts which rise to the level of conduct necessary to state a claim for intentional infliction of emotional distress. Defendant correctly states that the seminal

---

**16.** Defendant has additionally moved to dismiss Count I of Plaintiffs' Complaint on the basis that Plaintiffs have failed to post a bond to cover discovery costs as required by Florida Statutes Section 624.155(4)(c). However, the requirement to post a bond, by the plain terms of Section 624.155(4), is only applicable where a plaintiff seeks punitive damages under the statute. Because Plaintiffs have specifically stated within their Complaint that they are *not* seeking punitive damages under Florida Statutes Section 624.155 (see discussion of Count IV, *infra*), the Court deems the Defendant's argument in this regard as moot.

case in Florida regarding this tort is *Metropolitan Life Ins. Co. v. McCarson*, 467 So.2d 277 (Fla.1985) in which the Florida Supreme Court stated that the conduct must be so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. *See also Dominguez v. The Equitable Life Assurance Society of the United States*, 438 So.2d 58 (Fla. 3d DCA 1983).

Plaintiff alleges, in support of this Count, that Defendant knew the Plaintiffs were particularly susceptible to emotional distress because of their daughter's death and further knew the emotional distress that would be caused by the arbitration hearing.

In *McCarson*, by way of comparison, the insured required round-the-clock nursing care which Metropolitan was required to pay for under the terms of the insurance contract. Metropolitan ceased all payments when proof of ineligibility for medicare was not forthcoming from the insured and she was consequently placed in a nursing home. Evidence at trial showed that the insured probably suffered a critical heart attack as a consequence of the stress of her new surroundings. The Florida Supreme Court held that this conduct did not rise to the level needed to prove a claim for intentional infliction of emotional distress.

Without minimizing the emotional distress that the Plaintiffs must surely have suffered because of their daugher's death, the actions *of the insurance company* as alleged in the Complaint simply do not rise to the level required by law to state a claim for intentional infliction of emotional distress. The Florida Supreme Court has made clear that this cause of action is not to be utilized lightly.

### III. Count III—Tortious Breach of Contract

■ Florida law is unequivocal that there is no cause of action for tortious breach of contract unless there exists an independent tort upon which relief can be granted. *Industrial Fire and Casualty Insurance Co. v. Romer*, 432 So.2d 66 (Fla. 4th DCA), *rev. denied*, 441 So.2d 633 (Fla. 1983); *Safeco Insurance Co. of America v. Campbell*, 433 So.2d 25, 27 (Fla. 1st DCA 1983) (involving facts substantially similar to the case sub judice). Plaintiffs apparently concede that the Complaint fails to allege an independent tort; however, Plaintiffs argue that *Rowland v. Safeco Ins. Co. of America*, 634 F.Supp. 613 (M.D.Fla. 1986) makes clear that the rule of *Romer* is no longer controlling.

Plaintiffs argue that *Rowland* now permits an action against an insurer for a bad faith refusal to pay without alleging that their insurer's actions amount to an independent tort under Florida Statutes Section 624.155. *Rowland*, however, was concerned strictly with the statutory bad faith cause of action—not common law causes of action. The rule of *Romer* applies with respect to the common law tort for tortious breach of contract, as is pled here, and, under that law, an independent tort must be shown. That is simply not alleged here. For that reason, Count III of Plaintiffs' Complaint must fail.

### IV. Count IV—Punitive Damages

Count IV of Plaintiffs' Complaint requests punitive damages on the basis that "[t]he acts hereinabove described were willfully and knowingly done by the Defendant ... and were done maliciously and with a wanton disregard for the rights of the Plaintiffs and constituted a course of dishonest dealings by the Defendant...." The Complaint specifically states that "[t]his Count is brought without reference to Florida Statutes Section 624.155."

Nonetheless, Defendant has moved to strike Plaintiffs' demand for punitive damages with respect to Count I of Plaintiffs' Complaint on the basis that Florida courts have consistently held that punitive damages are not recoverable in an action for bad faith in failing to pay a first party claim, citing common law bad faith actions, including *Baxter v. Royal Indemnity Company, supra*.

In view of the Court's ruling contained in this Order that Plaintiffs' bad faith cause of action is a statutory right not previously recognized at common law, and in further

view of the fact that Plaintiffs have specifically not demanded punitive damages under Florida Statutes Section 624.155, the Court deems Defendant's request to strike punitive damages as to Count I as moot.

Based on the foregoing, it is

ORDERED AND ADJUDGED as follows:

1. Defendant's Motion to Dismiss Count I of Plaintiff's Complaint be and the same is hereby DENIED.*

2. Defendant's Motion to Dismiss Count II of Plaintiffs' Complaint be and the same is hereby GRANTED for failure to state a claim for intentional infliction of emotional distress.

3. Defendant's Motion to Dismiss Count III of Plaintiffs' Complaint be and the same is hereby GRANTED for failure to state a claim for tortious breach of contract.

4. Defendant's Motion to Dismiss Count IV, relating as it does to striking any claim for punitive damages with respect to Count I, be and the same is hereby DENIED as MOOT in view of Plaintiffs' specific assertions that they are not pursuing punitive damages with respect to Count I.

---

* Defendant shall respond to Count of Plaintiffs' Complaint within fifteen (15) days from the date of this Order.